## HATTEN v. VOSE.
### No. 3236.

Circuit Court of Appeals, Tenth Circuit.
July 3, 1946.

Roger L. Stephens, of Oklahoma City, Okl. (Fred L. Hoyt and Howard B. Hopps, both of Oklahoma City, Okl., on the brief) for appellant.

D. A. Richardson, of Oklahoma City, Okl. (Richardson, Shartel, Cochran & Pruet, of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal by Roy Hatten, ancillary receiver of U. S. Cities Corporation, from the judgment of the lower court setting aside a prior order authorizing him to prosecute a conversion suit against appellee, R. A. Vose, and permanently enjoining him from prosecuting the same.

U. S. Cities Corporation is a Delaware corporation. Byron F. Everitt was one of the principal stockholders of the corporation and was its president. The corporation was engaged in the oil business in Oklahoma. It purchased a one-half interest in a valuable oil and gas lease in Oklahoma for $500,000. Only part of this purchase price was paid in cash, and the balance thereof was evidenced by the notes of the corporation, secured by a mortgage on its assets. Thereafter it undertook to procure a new loan to liquidate this indebtedness. It entered into a contract with R. A. Vose by which he was to act as its representative and agent in procuring a new loan for $130,000. The corporation issued its notes for this sum. In negotiating this new loan, Vose endorsed and guaranteed the payment of the notes of the corporation in the amount of the loan. In consideration of his endorsement of its notes, the corporation assigned to him as security Everitt's note for $100,000, held by the corporation, together with 10,000 shares of U. S. Cities preferred stock, and 1,500 shares of D. J. Ryan Foundry Company stock, which were pledged as security for the $100,000 note. The contract further provided that Vose was to act as trustee for the holders of the corporation's notes and was to receive the oil runs and apply them to the payment of the notes as they matured, until they were paid in full, after which he was required to reconvey to the corporation all the collateral which had been conveyed to him as security for his endorsement of the notes. It is around this $100,000 Everitt note and its collateral that this controversy centers.

The stipulation of facts filed in this case recites in detail six separate suits which were filed in Oklahoma and Michigan, and which are intertwined around the affairs of this corporation and the respective parties to this litigation. Reference will be made only to such of these suits as we think are essential to an understanding of the questions presented.

On May 10, 1927, Vose filed a foreclosure action against the company on its notes in the court of competent jurisdiction in

Creek County, Oklahoma.[1] The company filed an answer and counterclaim against Vose in which it sought an affirmative judgment against him for charging usurious rates of interest. Everitt was not an original party to this suit, but he filed an intervening petition alleging that his $100,000 note to the company was an accommodation note. The trial court first found that he was an accommodation maker, but later set the order aside and reserved the question of ownership for subsequent determination by any court of competent jurisdiction. No further determination was made with respect thereto in the Creek County suit.

Upon a trial on the merits, judgment was entered March 15, 1929, in favor of the company and against Vose for $28,246.78. An appeal was taken by Vose to the Supreme Court of Oklahoma, where the judgment was affirmed Oct. 13, 1931. Vose thereupon paid the judgment and reassigned to the company its one-half interest in the oil and gas lease which had been assigned to him. He did not, however, reassign to the company the $100,000 Everitt note and its collateral.

On February 9, 1929, while the Creek County suit was still pending before the trial court, Hatten was appointed receiver of the company in a proceeding instituted against it by creditors in the United States District Court for the Eastern District of Michigan.[2] Thereafter, on February 23, 1929, he was appointed ancillary receiver in an action instituted by the same creditors in the United States District Court for the Western District of Oklahoma.[3]

On April 7, 1930, while the Creek County suit was pending on appeal in the Supreme Court of Oklahoma, Vose filed suit in the United States District Court for the Eastern District of Michigan[4] against Everitt. In this action he sought affirmative relief against Everitt in connection with his foreclosure action on the $100,000 note, the exact nature of which is not material to the issues involved in this appeal. By agreement, Everitt was not required to answer in this action until April 28, 1932, the purpose thereof being to await the decision of the Supreme Court of Oklahoma in the Creek County suit. On May 23, 1932, the primary receiver was made a party to the Michigan suit. On April 26, 1932, after the institution of the Michigan suit, but prior to the time the primary receiver was made a party therein, on an ex parte application, the United States District Court for the Western District of Oklahoma entered an order authorizing the ancillary receiver of the company to institute an action against Vose to recover the $100,000 Everitt note and its collateral.[5] It was upon this order that the ancillary receiver instituted this action against Vose for damages for the conversion of this note and its collateral. This suit was instituted May 19, 1932. On July 14, 1932, Vose filed a motion asking the court to withdraw the order authorizing the institution of the conversion suit, on the ground that the court was without jurisdiction because the title to this note and its security was being sought to be determined in the Michigan suit which had been filed prior to the institution of this suit. On a hearing on this motion, the court deferred action thereon, but enjoined the ancillary receiver from prosecuting the conversion suit until the further orders of the court. Thereafter, on October 23, 1934, Vose filed a further motion to vacate the order on the ground that the Michigan suit in which the company, the primary receiver, and Everitt all were parties, had been determined and that the Michigan court had ordered Vose to deliver the Everitt note and its collateral to Everitt.

The copy of the proceedings in the Michigan court attached to this motion established that on July 11, 1932, after the Oklahoma Supreme Court affirmed the judgment in the Creek County suit, Vose filed an amended answer and counterclaim in the

---

[1] This action will be referred to as the Creek County suit. This action was instituted before the company was placed in receivership.

[2] In this case, Hatten will be referred to as primary receiver.

[3] In this case, he will be referred to as ancillary receiver.

[4] This suit will be referred to as the Michigan suit.

[5] This suit will be referred to as the conversion suit.

Michigan suit in which he asserted that since the affirmance of the Creek County judgment by the Supreme Court of Oklahoma, he no longer asserted any right or claim against the Everitt note or its collateral, but that Everitt was asserting the right to the same and that the primary receiver also was claiming the same, and that he was therefore unable without liability to himself to determine the rights of the respective claimants thereto. He alleged the institution of the conversion suit against him. He again tendered the securities into court for disposition by order of the court. He prayed that the company and its receiver be required to dismiss the conversion action in Oklahoma and that the court adjudicate the ownership of the securities in question. On the same day, the primary receiver filed his answer to Everitt's cross complaint in the Michigan suit, denying his ownership of the collateral to his $100,000 note, and denying that the $100,000 note was an accommodation note, and alleged that the company and the receiver were entitled to the return of the note and its collateral. He further recited his appointment as ancillary receiver by the Oklahoma United States District Court, his authorization to prosecute the conversion action, and denied the jurisdiction of the Michigan court to require him to dismiss the same. The issues raised by these pleadings were referred by the Michigan court to a Master for findings of fact and conclusions of law. The Master found that Vose was willing to deliver the securities to either the primary receiver or to Everitt without restrictions, except that he asked the court to determine who was the owner thereof and by its decree direct the discontinuance of the conversion suit. He further found that according to the statements of the primary receiver and of the company they disclaimed any title or interest in the securities except as claimed in the conversion suit. The Master concluded as a matter of law that the Michigan court was without jurisdiction to direct a discontinuance of the conversion suit by the ancillary receiver. He recommended that inasmuch as Vose was only seeking to whom he could safely deliver the securities and since the receiver disclaimed any right or title therein, except as claimed in the conversion suit, that a decree be entered directing Vose to deliver the securities to Everitt.

The court adopted the recommended findings of fact and conclusions of law by the Master, and in conformity therewith, on September 4, 1934, entered a decree as follows: "That this court is without jurisdiction to order the defendant, Receiver, Roy Hatten, to discontinue the conversion suit pending in the District Court of Oklahoma County, State of Oklahoma, in which said Receiver is Plaintiff and R. A. Vose is Defendant, * * *. That inasmuch as the Plaintiff only seeks to determine by this action as between the two Defendants to whom he may safely deliver the certificates of capital stock referred to in Plaintiff's original bill of complaint, together with the instrument therein referred to in Paragraph Thirteen as Exhibit C, and because the Defendant, U.S. Cities Corporation and its Receiver, Roy Hatten, disclaim any and all right, title and interest in and to said instrument and certificates of stock, except as claimed in said conversion suit, the Plaintiff deliver said instrument and certificates of stock, more particularly described as follows, to the Defendant, Byron F. Everitt: * * *. That this court is not intending to determine any issue involved in said conversion suit."

Thereafter, on August 17, 1945, upon further consideration of Vose's motion to vacate the ex parte order authorizing the ancillary receiver, to institute and prosecute the conversation action against him, the court below sustained the same, set the order aside, and permanently enjoined the ancillary receiver from prosecuting the same, and required him to dismiss the action with prejudice, at the cost of the receiver. It is from this judgment that this appeal is prosecuted.

Vose challenges the receiver's right to maintain this appeal on the ground that he failed to obtain an order for the appeal from the court of his appointment, and urges that in the absence of such an order he has no authority to maintain the appeal. The general rule is that a receiver may

not ordinarily appeal without first obtaining authority from his creator, the court appointing him. Am.Jur., Vol. 2 p. 963, § 190, states the rule as follows: "A receiver, being a mere officer of the court, has, as a general rule, no right, in the absence of previous authority from the court of his appointment, to appeal from a judgment respecting the receivership. To allow receivers to review the rulings of the court under whose appointment they act, without first obtaining authority for that purpose, would tend to the consumption of the fund in the payment of costs and attorneys' fees, rather than to the conservation of the interest of those for whose benefit insolvent funds are administered." In Cobbs v. Vizard Inv. Co., 182 Ala. 372, 62 So. 730, Ann. Cas. 1915D, 801, the court said: "But he is the mere agent of the court for the collection and distribution of the assets of the insolvent corporation under orders of the court which fully protect him, and in this disposition of the property he has no personal concern, except to the limited extent indicated above."

In Smith v. Goodeagle Refining Co., 105 Kan. 148, 181 P. 552, 553, a receiver in a mortgage foreclosure action was ordered to sell the property. He reported a sale for $57,000, of which $53,000 was paid in cash. After the time for the payment of the balance had expired, the tender of the final payment was refused by the receiver. He then made an application to the court for an order to resell the property. The application was denied, and he was ordered to accept the balance due and deliver the property. He appealed from this order. The Supreme Court dismissed his appeal for lack of authority to maintain it. The court stated: "As the order made did not affect him either as to compensation or expenses of administration, and did not involve any personal interest of his, he had no right to complain of or contest with the court the propriety or validity of its order." The Kansas Court recognized that there were instances in which a receiver might appeal without the prior approval of the court appointing him.

The Supreme Court of the United States surveyed generally the status of a receiver with respect to his right to appeal from the order of the court of his appointment in Bosworth v. Terminal R. Ass'n, 174 U.S. 182, 19 S.Ct. 625, 43 L.Ed. 941.

As far as pertinent here, the Supreme Court held that a receiver had power to defend the estate against all claims which are antagonistic to the rights of either party to the suit, subject, however, to the limitation that he may not in such defense question any order or decree of the court distributing burdens or apportioning rights between the parties to the suit, or any order or decree resting upon the discretion of the court appointing him. We think this pronouncement by the Supreme Court controls the issues in this case and militates against appellant's right to prosecute this appeal. It was necessary for the ancillary receiver to obtain authority of the court of his appointment before he could institute the conversion suit. The court had the same power to order him to discontinue or dismiss the action that it had to authorize him to institute it, and such order will stand if there is no abuse of discretion.[6] The only question, then, is whether the court abused its discretion in requiring the ancillary receiver to dismiss the conversion suit.

At the time Vose filed his first motion to require the dismissal of the conversion suit, the picture was about as follows: The conversion suit against Vose was pending in the Oklahoma courts between him and the ancillary receiver. This suit of necessity was predicated upon the ownership of the Everitt note and its collateral by the corporation. Everitt, who was claiming the right to have his note and its collateral returned to him, was not a party to this suit. Neither was there any way in which Vose could compel him to be made a party. At the same time the Michigan suit was pending in the federal court in Michigan. There the company, its primary receiver, Vose, and Everitt all were parties. In that suit the corporation was asserting its ownership of the Everitt note and its col-

[6] Investment Reg. v. Chicago & M. Elec. R. Co., 7 Cir., 251 F. 510; Ray v. Trice, 53 Fla. 864, 42 So. 901.

lateral through its primary receiver. Everitt was asserting his right to the return of these securities to him. This was the only action in which all the parties were present and in which a complete adjudication of all the conflicting claims could be had.

The lower court apparently concluded that these conflicting claims should be adjudicated in the Michigan suit. It accordingly stayed its hand, deferred final action on Vose's motion of intervention, and enjoined the ancillary receiver from proceeding with the conversation suit until the further order of the court. When the final judgment of the Michigan court was thereafter called to its attention, the trial court required the ancillary receiver to dismiss the conversation suit with prejudice.

■■ The ancillary receiver here urges that the trial court misconstrued the effect of the Michigan decree. It is argued that the Michigan decree did not adjudicate the title and ownership of the securities in question as between the receiver and Everitt, and that the court erred in so construing it. If the Michigan decree did not adjudicate the title and ownership of these securities as between the primary receiver and Everitt, it was of no force or effect. In his intervening petition, the primary receiver asserted title and ownership of these securities in himself. Everitt claimed that he was the owner thereof and entitled to their return. Vose was making no claim of ownership but was asking the court to adjudicate the conflicting claims of these two parties so that he could safely deliver them under the direction of the court. But the decision in this case does not turn upon whether the Michigan decree actually adjudicated the title and ownership of these securities for all purposes. When the primary receiver in open court disclaimed "any and all right, title and interest in and to said note and stocks, except as claimed in said conversión suit", he barred himself from thereafter asserting any title thereto or maintaining or having any standing in court to urge that any action predicated upon the ownership

thereof be permitted. He attempted to explain his disclaimer by contending that the alleged conversion made Vose the owner by "a kind of forced sale of it", and therefore it was no concern of the company what Vose did with it. But this argument overlooks the rule of law that in an action in trover and conversion, title does not pass until satisfaction of the judgment,[7] or, as held in some jurisdictions, until the entry of judgment.[8]

■ While Hatten was both primary and ancillary receiver, we must consider the problem presented by the appeal as though the two receivers were separate persons. As primary receiver Hatten had no standing in the Oklahoma court. When, as such receiver, he was confronted with the adverse claim of ownership of these securities by Everitt in the Michigan case, it was his duty to assert and establish his title thereto if he could. When he waived his claim to the title and ownership of these securities, he was through. Whether the ancillary receiver would, in the face of such a waiver by the primary receiver, be permitted to assert the title thereafter in the ancillary receivership, rested within the sound discretion of the Oklahoma court.

■ The provision in the Michigan decree providing that since the primary receiver had disclaimed any right or title in the securities except as asserted in the conversion suit, Vose was therefore directed to deliver them to Everitt, cannot be construed as a sanction of the prosecution of the conversion suit, because the judgment specifically provided "that this court is not intending to determine any issue involved in said conversion suit." This provision was included in the decree because, as further stated in the judgment, the Michigan court realized that it was "without jurisdiction to order the Defendant, Receiver, Roy Hatten, to discontinue the conversion suit pending in the District Court of Oklahoma."

There is nothing in the record or judgment of the trial court which justifies the

[7] Third Nat. Bank of St. Lewis v. Rice, 161 F. 822, 23 L.R.A.,N.S., 1167, 15 Ann.Cas. 450; Pierpoint v. Hoyt, 260 N.Y. 26, 182 N.E. 235, 83 A.L.R. 1195.

[8] Hawkins v. Collins, 61 S.C. 537, 39 S.E. 768; Pierpoint v. Hoyt, 260 N.Y. 26, 182 N.E. 235, 83 A.L.R. 1195.

conclusion that the trial court based its judgment of dismissal upon the sole ground that the Michigan decree had adjudicated all questions and was res judicata and therefore binding upon it. An examination of the entire record leads to a contrary conclusion. As stated, the court had deferred action on the motion to require a dismissal of the conversion suit until the conflicting ownership of these securities could be litigated. When the motion came up for final consideration, the court reviewed what had been done in the Michigan case, but it also considered independently the question whether there was reason to believe that Vose was guilty of conversion, for the purpose of determining whether the ancillary receiver should now be permitted to prosecute the conversion suit in which he, of necessity, must assert the title which the primary receiver refused to assert in the court of primary jurisdiction. The trial court was of the opinion that there were no grounds to conclude that Vose had converted these securities and no sound reason for authorizing the expenditure of funds of the trust estate in the prosecution of a suit which the court felt could not be sustained. The court in its opinion called attention to the conflict between the company and Everitt as to the ownership of the securities and that this dispute arose after the securities had rightfully come into the possession of Vose. The court in its opinion states that Vose "not only had a right to maintain possession of it until the controversy was settled, but that it was his duty, both to himself and the disputants, to do so. His continued possession until it was settled will not sustain an action for conversion." This conclusion is, in our opinion, amply supported by the record.

The administration of the affairs of the receivership was lodged with the court and not with the receiver. He was only the arm of the court for the purpose of carrying out its directions. Whether the assets of the estate should be spent in prosecuting a conversion suit under all the circumstances in this case, including the court's opinion that there was no ground therefor, was for the determination of the court and not for that of the receiver. The court viewed the entire situation and evidently concluded that under the circumstances of this case it would constitute an improvident use of the corporation's funds to authorize the continued prosecution of this suit. This decision rested within the sound discretion of the court. There was no abuse of its discretion by the court, and its agent, the receiver, may not challenge the soundness thereof by this appeal.

A number of other issues are presented which we have considered but find without merit.

The judgment of the trial court is accordingly affirmed.