**John TROELSTRUP, as equity receiver for John M. Tobin, et al., Plaintiffs–Appellants,**

v.

**INDEX FUTURES GROUP, INC., and Jack Carl/312–Futures, Inc., Defendants–Appellees.**

No. 97–2288.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 17, 1997.

Decided Dec. 4, 1997.

James A. McGurk (submitted on briefs), Chicago, IL, for Plaintiffs–Appellants.

James B. Koch, Gardiner, Koch & Hines, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and EASTERBROOK and ROVNER, Circuit Judges.

POSNER, Chief Judge.

We ordered the parties to this appeal from the dismissal of a third-party claim to brief several issues relating both to our jurisdiction and to that of the district court before the merits of the appeal are briefed and argued. We conclude that we have jurisdiction but that the district court did not, at least with respect to the receiver's claim. We vacate the judgment and direct the district court to dismiss that claim and to reconsider its action in allowing a number of individual investors to join as third-party coplaintiffs with the receiver.

The Commodity Futures Trading Commission brought suit against John Tobin, a trader who is alleged to have defrauded investors of more than $1 million, for violations of the Commodities Exchange Act. At the Commission's request, the district court appointed an equity receiver for Tobin. The assigned task of the receiver (John Troelstrup) was to identify, take possession of, marshal, and administer Tobin's assets, so that they would be available to persons having claims against Tobin, primarily the defrauded investors. See 28 U.S.C. § 959(b); Fed.R.Civ.P. 66; 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2981 (1973). The receiver filed a third-party claim, in the Commission's suit, against Index Futures Group, Inc. and an affiliated company that we can ignore. Index is a registered futures commission merchant through which Tobin traded, and the claim is

that its negligence facilitated Tobin's fraud. This claim was filed on behalf not of Tobin as such, for he had not been wronged by Index's negligence, but of four commodities trading accounts (later reduced to one, the title of which was "Phoenix Pharynol") that Tobin had established with Index. Later the district judge allowed the receiver's lawyer to amend the complaint to add as coplaintiffs 57 individuals whose money Tobin had put into the Phoenix Pharynol account. After a bench trial the district judge gave judgment for the third-party defendant, Index. The receiver and the individual investors have appealed.

■■■ The investor appellants designated the wrong order in their notice of appeal, but this mistake, not having misled anyone, is not fatal. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Chauncey v. JDR Recovery Corp.,* 118 F.3d 516, 517 (7th Cir.1997). Of equal inconsequence is the receiver's failure to have obtained the formal authorization of the district court to appeal. True, there is a judge-made rule of long standing that, with immaterial exceptions, an equity receiver must get the permission of the court that appointed him to appeal. *Booth v. Clark,* 58 U.S. (17 How.) 322, 331, 15 L.Ed. 164 (1854); *Holland v. Sterling Enterprises, Inc.,* 777 F.2d 1288, 1291 (7th Cir. 1985); *Hatten v. Vose,* 156 F.2d 464, 467–68 (10th Cir.1946). (For the exceptions, see *Bosworth v. Terminal Railroad Ass'n,* 174 U.S. 182, 19 S.Ct. 625, 43 L.Ed. 941 (1899); *Holland v. Sterling Enterprises, Inc., supra,* 777 F.2d at 1291–92.) The reason the cases give for this rule—that the receiver is an officer of the court, see, e.g., *Holland v. Sterling Enterprises, Inc., supra,* 777 F.2d at 1291—is unsatisfactory, since a trustee in bankruptcy bears the same relation to the bankruptcy court as an equity receiver does to the equity court yet no one supposes that the trustee requires the bankruptcy court's permission to appeal. See *In re Szekely,* 936 F.2d 897, 899 (7th Cir.1991); *Fox Valley AMC/Jeep, Inc. v. AM Credit Corp.,* 836 F.2d 366, 368 (7th Cir.1988); 3 Daniel R. Cowans, *Bankruptcy Law and Practice* § 18.3, pp. 497–98 (6th ed.1994). No matter; the rule is not questioned in this case. Yet one might have thought that it would follow from the rule and its "officer of the court" rationale

that the receiver couldn't appeal at all, with or without the court's permission, any more than a law clerk, master, or other judicial adjunct can appeal the orders of the court that employs him. The Supreme Court's fullest discussion of appeals by receivers, the *Bosworth* opinion, says nothing about permission. But the rule that allows the receiver to appeal with the judge's permission, like the rule that forbids him to appeal without it, is not questioned in this case; and the analogy to the trustee in bankruptcy is sufficiently close, and the case law sufficiently weighty, to still any doubts that we might have about the rule as an original matter. So we can limit our consideration to whether permission was granted and if not whether the appeal must be dismissed. The two questions turn out to be related.

Where, as in a case such as this, the challenge is to an order placing certain assets beyond the receiver's reach, so that an appeal from the order would not place the receiver in conflict with the duty the court had laid upon him of maximizing the value of the debtor's (that is, of Tobin's) estate, the court can be expected to permit the appeal. Indeed in this case the district judge issued a "clarification," after the appeal was filed, indicating that he had intended to allow the receiver to appeal all along. No formalities are prescribed for authorizing an appeal by a receiver, so we do not think the belatedness of the permission in this case is a bar to our jurisdiction—especially as it is far from clear that the requirement of permission should be deemed jurisdictional.

■■■ The practical consequence of deeming the issue jurisdictional would be that we would have to dismiss the appeal even if neither party was objecting to our deciding it. Issues thus are treated as jurisdictional when the Constitution, statutes, or rules evince a purpose to limit judicial power whether or not a party objects to its exercise. It is difficult to see the judge-made rule about getting the receiver's permission to appeal in this light. Not all rules regulating appellate jurisdiction are deemed jurisdictional. The civil rules require that a final judgment be set forth on a separate document from the court's opinion, Fed.R.Civ.P.

58, but noncompliance with the rule does not prevent the judgment from being treated as final and so appealable. E.g., *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam). And we have allowed belated Rule 54(b) certifications to save appellate jurisdiction. E.g., *Mendrala v. Crown Mortgage Co.*, 955 F.2d 1132, 1134 n. 1 (7th Cir.1992). It is true that the rule which with some exceptions requires the permission of the Solicitor General for a federal agency to appeal (28 C.F.R. § 0.20(b)) has been deemed jurisdictional, *United States v. Providence Journal Co.*, 485 U.S. 693, 698–700, 108 S.Ct. 1502, 1506–07, 99 L.Ed.2d 785 (1988), but that is because the rule performs an important function in maintaining the President's authority over executive branch agencies. The judge-made rule that permits an equity receiver to appeal only if permitted by the district court does not perform an important function, as shown by the different treatment of the otherwise very similar trustee in bankruptcy, and so we conclude that is not jurisdictional. It follows that we have jurisdiction of the appeal.

The district court's jurisdiction over the third-party claim is also secure. Even though the claim was filed before the effective date of the statute creating the supplemental jurisdiction of the federal district courts, 28 U.S.C. § 1367, it is not barred by *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). On this point, *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir.1995), is controlling authority.

■ *Scholes* also makes clear, however, that the receiver did not have standing to sue "on behalf of" the Phoenix Pharynol account (meaning, as a practical matter, on behalf of the investors whose investments were deposited in that account), even though the account was an instrumentality of Tobin's fraud. In *Scholes*, the Tobin figure had created corporations that in turn created the limited partnerships in which the defrauded investors had put their money. The Tobin counterpart had then caused the corporations to divert that money to him, his ex-wife, his favorite charities, and so on. We held that his receiver, *who had also been appointed the corporations' receiver*, had standing to sue on behalf of the corporations, because they were entitled to the return of the money that the

defrauder had improperly diverted from them. Troelstrup was not appointed receiver for Phoenix Pharynol as well as Tobin. He was appointed as receiver for Tobin both in his own name and *doing business as* Phoenix Pharynol and the other accounts now consolidated with it, which is like saying that he was appointed as receiver for Tobin both under Tobin's real name and under various aliases. Troelstrup, thus, was just Tobin's receiver, and so he could not sue Index on behalf of Phoenix Pharynol, not having been appointed its receiver. And he could not sue Index on behalf of either Tobin, the defrauder, who has no possible claim against Index, or on behalf of the investors, the victims of the fraud, because he was not *their* receiver. *Scholes v. Lehmann, supra,* 56 F.3d at 753–54. There is a sense in which he is the investors' agent, for he is trying to maximize the value of their debtor's, Tobin's, assets, just as a trustee in bankruptcy tries to maximize the value of the bankrupt's assets for the benefit of the bankrupt's creditors. (We are not told whether Tobin is or was in bankruptcy.) If Tobin had a claim against Index, the analogy would be complete. But Tobin has no claim against Index. The receiver is not trying to build up Tobin's assets. He is suing a third party on behalf of Tobin's creditors to enforce a personal right of theirs, not a right of Tobin's in which they have an interest by virtue of being his creditors.

■ Not only was Troelstrup not appointed the receiver of anyone except Tobin; he could not have been appointed the receiver of Phoenix Pharynol because it is not a corporation or other legally recognized entity on whose behalf a receiver or anyone else could sue. In *Scholes* there were entities that might be bearers of legal rights, besides the defrauder, and so the receiver wasn't limited to being a receiver for the defrauder. All there is here, besides Tobin himself, is an account in a brokerage house. The account is an asset, like a bank account, rather than a rights-bearing entity. It was established by Tobin as a sole proprietorship, which is a type of enterprise that, as we observed recently, has no legal identity apart from the proprietor. *Bartlett v. Heibl*, 128 F.3d 497, 499–500 (7th Cir.1997). It was unlike the commodity pool held in *CFTC v. Chilcott*

*Portfolio Management, Inc.,* 713 F.2d 1477, 1482 (10th Cir.1983), to be an unincorporated association capable of suing and being sued; the pool had a good deal more structure than Tobin's brokerage account. See *Johnson v. Chilcott,* 599 F.Supp. 224, 231 (D.Colo.1984). Troelstrup calls the Phoenix Pharynol account "the Fund." A name of his own devising, it has no more significance than if he called it "Phoenix Pharynol Corporation," since it is not a corporation. Hamlet's dictum that "there is nothing either good or bad but thinking makes it so" has limited scope in federal litigation.

This leaves the 57 investor coplaintiffs to be considered. The district judge, so far as we can reconstruct from a sketchy record, allowed them to be added to the case by amendment on the ground that their claims were ancillary to the receiver's third-party claim. That to which they are ancillary was never within the district court's jurisdiction. Whether they may file their own third-party claim against Index in the CFTC's suit is a matter to be considered in the first instance by the district court. The judgment is vacated with directions to that court to dismiss the receiver's claim against Index and to reconsider the grant of leave to amend the complaint to add the individual investors as coplaintiffs.

VACATED AND REMANDED WITH DIRECTIONS.