**STATE OF NEW YORK, Petitioner,**

and

**Commonwealth of Pennsylvania, et al., Intervenors–Petitioners,**

v.

**ENVIRONMENTAL PROTECTION AGENCY and Carol M. Browner, Respondents,**

and

**State of Illinois, et al., Intervenors– Respondents.**

No. 96–1714.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1997.

Decided Jan. 12, 1998.

988

Dennis C. Vacco, J. Jared Snyder (argued), New York State Department of Law, Environmental Protection Bureau, Albany, NY, for Petitioner.

Carol M. Browner, Environmental Protection Agency, Karen L. Egbert (argued), Department of Justice, Land & Natural Resources Division, Washington, DC, for Environmental Protection Agency and Carol M. Browner.

A. Benjamin Goldgar (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, Robert Sharpe, Bonnie R. Saw-

yer, Illinois Environmental Protection Agency, Springfield, IL, for State of Illinois.

Anita Kimmell, Office of the Attorney General, Indianapolis, IN, for State of Indiana.

John C. Scherbarth, Office of the Attorney General, Lansing, MI, for State of Michigan.

Frank D. Remington, Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for State of Wisconsin.

Katherine D. Hodge, Jennifer M. Crain, Hodge & Dwyer, Whitney W. Rosen, Illinois Environmental Regulatory Group, Springfield, IL, for Illinois State Chamber of Commerce.

Henry V. Nickel, Norman W. Fichthorn, Andrea Bear Field, Lauren E. Freeman, Hunton & Williams, for Carolina Power & Light Company.

Norman W. Fichthorn, Andrea Bear Field, Lauren E. Freeman, Hunton & Williams, for Commonwealth Edison Company, Northern Indiana Public Service Company, Wisconsin Electric Power Company.

Norman W. Fichthorn, Lauren E. Freeman, Hunton & Williams, Washington, DC, for Detroit Edison Company and Duquesne Light Company.

M. Dukes Pepper, Jr., Joyce E. Epps, Commonwealth of Pennsylvania, Department of Environmental Protection, Harrisburg, PA, for Commonwealth of Pennsylvania, Department of Environmental Protection.

Jeffrey L. Amestoy, John H. Hasen, Office of the Attorney General, Montpelier, VT, for State of Vermont.

Susan Hedman, Daniel W. Rosenblum, Environmental Law & Policy Center, Chicago, IL, for Amicus Curiae.

Before POSNER, Chief Judge, and ROVNER and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

Before us is a petition to review a final rule issued by the Environmental Protection Agency granting the four states that abut Lake Michigan (Illinois, Indiana, Michigan, and Wisconsin) an exemption from limitations that the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*, requires states to impose on the emission of nitrogen oxides. *Approval of a Section 182(f) Exemption,* 61 Fed.Reg. 2428 (1996), codified in 40 C.F.R. §§ 52.726(k), 52.778(i), 52.1174(*l*), 52.2585(i). The petition for review was filed by New York (joined by Pennsylvania and Vermont), which being downwind from the Lake Michigan states wants the level of nitrogen oxide emissions originating in those states to be as low as possible.

When carbon compounds known as "volatile organic compounds" (VOCs) mix with nitrogen oxides (NOX) in the presence of sunlight, the result is ozone, a major factor in urban smog. (Carbon monoxide also contributes to the formation of ozone, but it is not a VOC and is not at issue in this case.) Yet once ozone is formed, a further addition of nitrogen oxides may react with the ozone in a way that will cause the ozone level to fall in the immediate area; at the same time, the additional nitrogen oxides, drifting downwind, may raise the ozone level elsewhere. And, conversely, reducing the quantity of nitrogen oxides in the air may raise rather than lower the ozone level in the area in which the mixing of the nitrogen oxides and the ozone takes place, while at the same time reducing the ozone level downwind. (A further complication, but not one at issue in this litigation, is that reducing the ozone level in the atmosphere may increase the incidence of skin cancer.) Thus, predicting the total effect on ozone (and therefore on smog) of a reduction in nitrogen oxide emissions, and the geographical incidence of that effect, is a tricky business; and the uncertainties of prediction have generated the interstate conflict that gives rise to the petition for review. New York is convinced that reducing the amount of nitrogen oxide emissions from sources in the Lake Michigan states will reduce the ozone level in New York. The Lake Michigan states believe that such a reduction might raise the ozone level in midwestern cities. And of course they are also concerned because the benefits of a reduction (if any) in the ozone level in the Midwest are unlikely to be as great as the costs of the pollution-control requirements that the EPA has waived in the rule under attack, for most

of the benefits from reducing the emission of nitrogen oxides in the emitting states will be received by the downwind states.

◼ We encounter at the threshold a jurisdictional issue—or at least a jurisdictional-seeming issue. It is whether the petition for review was filed in the right circuit. The Clean Air Act provides that petitions to review actions by the EPA that are "nationally applicable" shall be filed in the D.C. Circuit and actions that are "locally or regionally applicable" in the regional circuits. 42 U.S.C. § 7607(b)(1). The exemption of the Lake Michigan states is formally regional, but has effects outside the region; that is why the petitioner and the intervening petitioners are eastern rather than midwestern states. And the exemption crosses circuit lines, applying as it does to all the states of the Seventh Circuit plus Michigan, which is in the Sixth Circuit.

◼ None of the parties has raised a question about the propriety of the petition's being filed in this court. So if section 7607(b)(1) is merely a venue provision, as it was held to be in *Texas Municipal Power Agency v. EPA*, 89 F.3d 858, 865–67 (D.C.Cir.1996) (per curiam), any objection to our entertaining the petition is waivable and has been waived. *Panhandle Eastern Pipe Line Co. v. FPC*, 324 U.S. 635, 638–39, 65 S.Ct. 821, 823–24, 89 L.Ed. 1241 (1945); Fed. R.Civ.P. 12(h)(1); 28 U.S.C. §§ 1406, 2343. Provisions specifying where a suit shall be filed, as distinct from specifying what kind of court or other tribunal it shall be filed in, are generally considered to be specifying venue rather than jurisdiction. It would be usurpative for a federal court to assert jurisdiction over a case that the Constitution or statute had consigned to a state court, or even for a federal district court to assert jurisdiction over a case that should have been brought in a federal court of appeals, as in *Missouri v. United States*, 109 F.3d 440 (8th Cir.1997). So it must refuse to do so even if no party objects; that is the practical meaning of a jurisdictional requirement. *Troelstrup v. Index Futures Group, Inc.*, 130 F.3d 1274, 1276–77 (7th Cir.1997). But it is not usurpative for one federal court of appeals to assert jurisdiction (because of absence of objection) over a case that it would have been authorized to adjudicate if only the effects of the order sought to be reviewed had been felt in one part of the country rather than another.

◼ Even if this is wrong and section 7607(b)(1) does create a jurisdictional bar to a regional circuit's entertaining a petition to review an order of the EPA that has national applicability, the order challenged here is not of that character. The exemption that the petition for review challenges is limited to a cluster of states; it thus is regional in a literal sense. See *Madison Gas & Electric Co. v. EPA*, 4 F.3d 529 (7th Cir.1993). Although the effects of the exemption may be felt in other regions, that would be true of any major action by the EPA under the Clean Air Act, since air currents do not respect state boundaries. No doubt it would be possible to distinguish between major and minor effects. But such a vague criterion would be undesirable in a jurisdictional statute. Jurisdictional criteria should be precise, so that litigation does not become entangled in issues that are unrelated to the merits. Determining whether an action by the EPA is regional or local on the one hand or national on the other should depend on the location of the persons or enterprises that the action regulates rather than on where the effects of the action are felt.

This leaves the question which regional circuit the petition for review should have been filed in, the Sixth or the Seventh. This surely is a question of venue, and hence waived. Besides, there is no reason to think the Sixth Circuit the more appropriate venue, since three of the four states subject to the challenged exemption are in the Seventh Circuit.

◼ And so we come at last to the merits. Under the Clean Air Act, the EPA fixes ceilings (national ambient air quality standards) on the permissible levels of specific airborne pollutants, including ozone (as well as on some nitrogen oxides directly, but those ceilings are not at issue in this case). The states then submit plans for achieving the target ceilings (state implementation plans) for approval by the EPA. Section 110(a)(2)(D) of the Act, 42 U.S.C.

§ 7410(a)(2)(D), requires a state's implementation plan to prohibit emissions that will "contribute significantly" to another state's failure to attain or maintain an air quality standard. This section is not specifically addressed to ozone but it bears importantly on the control of interstate air pollution of whatever type. As a matter of fact, shortly after the oral argument in this court, the EPA issued a notice of proposed rulemaking that proposes to require states, including the Lake Michigan states, to make revisions to their state implementation plans that will reduce interstate ozone pollution. *Finding of Significant Contribution and Rulemaking for Certain States in the Ozone Transport Assessment Group Region for Purposes of Reducing Regional Transport of Ozone*, 62 Fed.Reg. 60,318 (1997).

In 1990, the Clean Air Act was amended to deal specifically with ozone. Section 185B of the amended Act, 42 U.S.C. § 7511f, directs the EPA (in conjunction with other bodies) to conduct a study of, among other things, the role of nitrogen oxides in the formation of ozone, and to report the results of the study to Congress; the report was submitted in 1993. Section 182(f)(1), 42 U.S.C. § 7511a(f)(1), imposes on the states a duty to control emissions of nitrogen oxides, but goes on (in section 182(f)(1)(A)) to lift the duty if "the [EPA] determines (when the [EPA] approves a [state implementation] plan or plan revision) that additional reductions of oxides of nitrogen would not contribute to attainment of the national ambient air quality standard for ozone in the area," "area" being defined in a way that, so far as the present case is concerned, includes the Lake Michigan states and excludes the downwind states. 42 U.S.C. § 7511a(f)(1)(A). And section 182(f)(3) provides that "at any time after the final report under section [185B] is submitted to Congress, a person may petition the [EPA] for a determination under [section 182(f)(1) ]." It was after the submission of the section 185B report that the Lake Michigan states petitioned under section 182(f)(3) for the exemption that the EPA granted and that New York and two other eastern states challenge.

Their principal argument is that the EPA can grant an exemption from the normal restrictions on the emission of nitrogen oxides—as opposed to making a mere "determination" under section 182(f)(3) that reducing the level of those emissions (by insisting on compliance with the restrictions) would not aggravate the ozone problem in the petitioning states—only in conjunction with the approval of a state implementation plan or a revision of such a plan. The effect of this interpretation would be to require the EPA to defer action on the Lake Michigan states' request for an exemption until it approves, in the recently begun section 110(a)(2)(D) proceeding, appropriate revisions in the states' implementation plans. Section 182(f) confines the EPA's consideration to the ozone problem in the states of emission and thus excludes consideration of downwind effects, but those effects will be at the center of the EPA's consideration of the revision of the Lake Michigan states' implementation plans. The effect of the rule challenged in this case is thus to allow the Lake Michigan states to continue to emit nitrogen oxides without regard to downwind effects until the completion and implementation of the section 110(a)(2)(D) proceeding, which will be years from now.

The EPA's interpretation of section 182(f) is at least as plausible as New York's, and that makes this an easy case under the *Chevron* doctrine. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Hanson v. Espy*, 8 F.3d 469, 474–77 (7th Cir.1993); *Watkins v. Blinzinger*, 789 F.2d 474, 478 (7th Cir.1986); *Gunn v. U.S. Dept. of Agriculture*, 118 F.3d 1233, 1238 (8th Cir. 1997). Immediate compliance with the requirements for limiting the emission of nitrogen oxides would require power plants and other stationary-source emitters of these oxides to install expensive pollution-control equipment at a time when the effect of nitrogen oxides on pollution is uncertain. That is why Congress authorized the EPA in section 182(f)(3), upon petition by affected persons, including states, 42 U.S.C. § 7602(e), to waive the standards for NOX if satisfied that compliance with those standards would not improve the ozone situation in the area, with-

out regard to any downwind effects. Of course later on, when the EPA considered downwind effects pursuant to the mandate of section 110(a)(2)(D), it would have in effect to rescind the permission granted under section 182(f)(3) if it found the downwind effects significant. But meanwhile states would not have to require expensive measures of compliance that might prove wasted should those effects ultimately be found not to be serious after all.

On New York's interpretation, section 182(f)(3) is empty. For having obtained the EPA's favorable determination under that subsection, the states would still have to submit an implementation plan revised in accordance with the determination and then ask the EPA for the exemption. Since they could have submitted the revised plan and asked for the exemption without bothering to first seek a favorable determination under section 182(f)(3), see *Guideline for Determining the Applicability of Nitrogen Oxides Requirements under Section 182(f)*, p. 4 (EPA Office of Air Quality Planning and Standards, Dec. 1993), proceeding under that section would be a waste of everybody's time—a superfluous gesture not plausibly imputed to congressional design. Of course, the direct route, by channeling the states' request for relief through the plan or plan-revision route, would bring section 110(a)(2)(D) into play and require consideration of downwind effects. That is why New York wants to confine the Lake Michigan states to that route. But it would defeat the apparent purpose of section 182(f)(3), which is to allow the postponement of full compliance with the control requirements for nitrogen oxides until the downwind effects are determined, provided that the effects of postponement in the emitting area are not adverse. So New York's interpretation really does read this section out of the statute, even though the section appears to be the key to a sensible response to the manifold uncertainties involved in the control of ozone. On New York's view, even if the Lake Michigan states could show that reducing their nitrogen oxide emissions would significantly worsen air quality in the Midwest, and even if the downwind effects of such a reduction were totally unknown, the EPA could not relax its NOX requirements

until the completion, years from now, of the section 110(a)(2)(D) proceeding. That doesn't make a lot of sense.

New York has another string to its bow, however. It argues that the EPA was mistaken to think that further reductions in nitrogen oxide emissions by stationary sources in the Lake Michigan states would do nothing for the ozone problem in those states. If that is right, the EPA should not have granted the states' section 182(f)(3) petition, quite apart from any downwind effects. There is grave doubt, however, whether New York has standing to enforce a provision of the statute that is designed for the protection of the people in the states in which the exemption is granted, that is, the Lake Michigan states. Not standing in the Article III sense; New York has been injured, at least in a probabilistic sense, *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1242 (7th Cir.1991), by the grant of the exemption. But standing in the sense that only the intended beneficiaries of a protective statutory provision are permitted to bring a civil suit to enforce it. *Id.* at 1243–44, and cases cited. The provision that New York is invoking here is intended for the protection of people in whose welfare New York has no direct interest, and if they aren't troubled by the exemption, why should the courts become involved? But as it is obvious that New York's challenge to the validity of the exemption has no merit, we'll skip the standing issue and go directly to the merits. *Norton v. Mathews*, 427 U.S. 524, 532, 96 S.Ct. 2771, 2776, 49 L.Ed.2d 672 (1976); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir.1996); *Rekhi v. Wildwood Industries, Inc.*, 61 F.3d 1313, 1316 (7th Cir.1995); *United States v. Stoller*, 78 F.3d 710, 715 (1st Cir.1996).

To determine the effects of the exemption in the emitting area, the EPA compares the effects on the ozone level of substantial reductions in the emission of VOCs (carbon compounds that, the reader will recall, react with nitrogen oxides in the presence of sunlight to form ozone) with the effects of substantial reductions in the level of nitrogen oxides and, more to the point, of VOCs plus nitrogen oxides. If the effects on the ozone level of just reducing the emission of VOCs

to the level required by the Clean Air Act (see *Guideline for Determining the Applicability of Nitrogen Oxides Requirements under Section 182(f), supra*, p. 27) are as great as the effects of the alternatives that involve reducing the emission of nitrogen oxides, the exemption will be granted. The thinking behind this approach is that if reducing the level of nitrogen oxides has no *incremental* effect on the ozone level, that is, no effect given required reductions in the cofactor in ozone pollution, forcing a reduction in the level of nitrogen oxides would not contribute to attaining the ozone standard. This is a sensible reading of the statute, and, under *Chevron*, miles away from anything we could properly reverse.

Two more issues require only the briefest discussion:

1. New York's challenge to the reduction in VOCs (40 percent) assumed by the EPA in comparing alternative approaches to the ozone problem has not been pressed in this court with sufficient particulars to require us to consider it. And anyway the EPA's determination that a 40 percent reduction is both feasible and required for compliance with the Clean Air Act is a technical judgment that is well within its discretion.

2. An amicus curiae asks us to reverse the EPA on the basis of evidence outside the administrative record; that we cannot do. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam); *Wisconsin Electric Power Co. v. Costle*, 715 F.2d 323, 326–27 (7th Cir.1983); *Valley Citizens for a Safe Environment v. Aldridge*, 969 F.2d 1315, 1319 (1st Cir.1992).

The petition for review is

DENIED.