**MADISON GAS & ELECTRIC COMPANY, Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 93–2131.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 18, 1993.

Decided Sept. 9, 1993.

---

Henry V. Nickel, Norman W. Fichthorn, Lynne L. Johnson, Hunton & Williams, Washington, DC, for petitioner.

Lee M. Thomas, Lawrence J. Jensen, Gerald H. Yamada, Carol M. Browner, E.P.A., Washington, DC, Valdas V. Adamkus, E.P.A., Region 5, Office of the Regional Counsel, Chicago, IL, Jonathan C. Averback, John C. Nagle, Dept. of Justice, Environmental Defense Section, Washington, DC, for respondent.

Before CUMMINGS, POSNER, and KANNE, Circuit Judges.

POSNER, Circuit Judge.

Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1), provides that petitions to review "nationally applicable regulations" issued by the Environmental Protection Agency under the Act are reviewable only in the U.S. Court of Appeals for the District of Columbia Circuit, while petitions to review "locally or regionally applicable" actions by the agency are reviewable only in the regional courts of appeals. The EPA asks us to dismiss Madison Gas and Electric Company's petition to review a portion of the EPA's new acid-rain regulations, 58 Fed.Reg. 15,634, 15,651–702 (March 23, 1993), on the ground that the petition challenges "nationally applicable regulations."

The regulations in question constitute an interesting experiment in pollution control. Designed to reduce the amount of acid rain, they create, effective in the year 2000, a national system of tradable pollution permits. Each permit—"allowance" is the term in the regulations—authorizes an electrical utility to emit a ton of sulphur dioxide per year from a specified generating plant owned by the utility. A utility may, of course, have more than one allowance; in fact the average is several thousand. The regulations use a variety of formulas to determine, on the basis of generating capacity, type of fuel, and other factors, how many allowances each of the nation's 2,200–plus electrical generating plants shall be allocated; the allocations are set forth in a table in the regulations. The total number of allowances may not exceed 8.95 million, and as the nation's electrical utilities emit more than 8.95 million tons of sulphur dioxide a year the new program will reduce the total emissions of this pollutant—that of course is the objective. Utilities may, however, trade allowances back and forth. That is the novelty of the program. It enables the cost of limiting emissions to be minimized. For example, a utility that could reduce its emissions at very low cost might sell one or more of its allowances to a utility that would incur a much higher cost to reduce its emissions.

The petition to review that the EPA wants us to dismiss challenges the allocation of sulphur-dioxide emission allowances to three electrical generating plants in Wisconsin owned by Madison Gas and Electric Company. The ground of the challenge is that the allowances are based on an incorrect determination of Madison's generating capacity, and we said that capacity is one of the factors that determine how many allowances each plant shall receive. The EPA argues that despite the local incidence of the determination, Madison may challenge it only in the D.C. Circuit because the determination is part of the national acid-rain program. It points out that if courts around the country begin giving utilities more allowances, the 8.95 million ceiling may be pierced.

If Madison were challenging a national feature of the acid-rain program, such as the tradability of emission allowances, it would be plain that its challenge could be brought only in the D.C. Circuit, even if the impact of the program varied greatly across the country. *National Resources Defense Council, Inc. v. Thomas,* 838 F.2d 1224, 1249 (D.C.Cir.1988). It would be equally clear that the challenge could be brought only in a regional circuit if the challenge were to a state implementation plan or some other regulation avowedly local or regional rather than national in its scope. Cf. *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 586, 100 S.Ct. 1889, 1894, 64 L.Ed.2d 525 (1980); *Wisconsin Electric Power Co. v. Reilly,* 893 F.2d 901, 906 (7th Cir.1990); *Indiana & Michigan Electric Co. v. EPA,* 733 F.2d 489, 491 (7th Cir.1984). This is the intermediate case. Madison is challenging an element of a na-

tional program—for the program involves allocating allowances to all the electrical generating plants in the nation, and all the allocations are listed, as we said, in a single table in the regulations—but the challenge is based upon an entirely local factor (Madison's generating capacity) and if successful will have no impact on the overall program except insofar as the award of additional allowances might pierce the national ceiling. It is only the latter factor that makes the EPA's motion to dismiss colorable, but we think it too speculative to warrant forcing the case into the D.C. Circuit. The EPA does not argue that it has granted the full 8.95 million allowances (one might think it easy to add up the allocations in the table; it isn't), so we don't know whether the danger of piercing the ceiling is a serious one. Even if it is, it would be equally presented in consolidated proceedings in the D.C. Circuit. The regulations contain procedures for reallocating allowances should the total initially allocated exceed the 8.95 million limit, and we cannot see what difference it makes whether (if necessary) those procedures are administered after the regional courts of appeals get through with local challenges of this sort or after the D.C. Circuit completes some massive consolidated proceeding. No doubt the separate review proceedings will involve a number of common issues, but that is equally true of the separate proceedings that section 307(b)(1) incontestably requires when state plans implementing the Clean Air Act are challenged. Congress could have channeled all Clean Air Act cases to the D.C. Circuit but obviously decided not to.

The motion to dismiss Madison's petition for review is

DENIED.