FILED
United States Court of Appeals
Tenth Circuit

July 6, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ATK LAUNCH SYSTEMS, INC.,

Petitioner,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

Respondent,

_____

UTAH PHYSICIANS FOR A HEALTHY
ENVIRONMENT,

Amicus Curiae,

DR. BRIAN MOENCH,

Movant.

Nos. 09-9561, 10-9501
and 10-9502

---

**PETITION FOR REVIEW FROM AN ORDER OF THE
ENVIRONMENTAL PROTECTION AGENCY
(EPA-HQ-OAR-2007-0562)**

---

Michael A. Zody (Michael L. Larsen, David W. Tundermann, M. Lindsay Ford,
and Elizabeth A. Schulte with him on the briefs), Parsons Behle & Latimer, Salt
Lake City, Utah, for Petitioner.

Jessica O'Donnell, United States Department of Justice, Environment & Natural
Resources Division (Geoffrey L. Wilcox, Office of General Counsel, United
States Environmental Protection Agency, and Ignacia S. Moreno, Assistant

Attorney General, Environment & Natural Resources Division, with her on the brief), Washington, D.C., Respondent.

Joro Walker and Charles R. Dubuc, Western Resource Advocates, Salt Lake City, Utah, on the brief for Amicus Curiae and Movant.

---

Before **MURPHY**, **HARTZ**, and **GORSUCH**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.  Introduction

Under the Clean Air Act, the Environmental Protection Agency ("EPA") is charged with establishing National Ambient Air Quality Standards ("NAAQS") for various air pollutants.  42 U.S.C. § 7409.  Once a NAAQS is established, EPA must promulgate designations of geographic areas across the nation according to their compliance with the NAAQS.  *Id.* § 7407.  These consolidated petitions challenge EPA's inclusion of portions of Box Elder County, Utah, and Tooele County, Utah, in a "nonattainment" area as to the NAAQS for fine particulate matter.  EPA moved to dismiss the petitions or to transfer the petitions to the D.C. Circuit, arguing the Clean Air Act's judicial review provision designates the D.C. Circuit as the proper forum.  For the reasons set out below, this court **TRANSFERS** the petitions to the U.S. Court of Appeals for the District of Columbia Circuit.

-2-

## II. Background

EPA is charged with establishing NAAQS for various air pollutants that may endanger public health and welfare. 42 U.S.C. §§ 7408-09. The NAAQS sets the maximum allowable air concentration for a particular pollutant. *Id.* § 7408. Once a NAAQS is established, each state is required to submit a list of all areas in the state with designations of nonattainment, attainment, or unclassifiable. *Id.* § 7407(d)(1)(A). Attainment areas meet the air quality standard established by the relevant NAAQS. *Id.* § 7407(d)(1)(A)(ii). Nonattainment areas are areas with air quality that does not meet the NAAQS or with air quality that "contributes to ambient air quality in a nearby area that does not meet" the NAAQS. *Id.* § 7407(d)(1)(A)(i). Finally, unclassifiable areas are areas as to which there is insufficient information for classification. *Id.* § 7407(d)(1)(A)(iii). EPA reviews all states' submitted designations and, if it disagrees with a particular designation, it must notify the state and give it an opportunity to demonstrate why any proposed modification is inappropriate. *Id.* § 7407(d)(1)(B)(ii). EPA then promulgates final designations. *Id.* § 7407(d)(1)(B)(i). These designations affect the obligations under the Act for each state in creating its State Implementation Plan ("SIP"), a plan each state must submit to EPA for approval to provide for the state's achievement and maintenance of the air quality established in the relevant NAAQS. *Id.* §§ 7410, 7471, 7502.

Since 1997, EPA has maintained a NAAQS for fine particulate matter, a pollutant known as $PM_{2.5}$ because it consists of particles less than 2.5 micrometers in aerodynamic diameter. *See* National Ambient Air Quality Standards for Particulate Matter, 62 Fed. Reg. 38,652 (July 18, 1997) (codified at 40 C.F.R. § 50.7). In 2006, EPA issued a revised NAAQS for $PM_{2.5}$, which triggered the designation process outlined above. *See* National Ambient Air Quality Standards for Particulate Matter, 71 Fed. Reg. 61,144 (Oct. 17, 2006) (codified at 40 C.F.R. § 50.7). EPA subsequently issued a guidance letter to the states explaining that the nonattainment designation applies not only to those areas violating the new $PM_{2.5}$ standard but also areas contributing to nearby violations. The guidance letter identified nine factors states should consider in recommending designations, but cautioned that states should evaluate areas "on a case-by-case basis" and consider any relevant factors or circumstances.

States then submitted proposed designations to EPA. Among others, Utah's proposed designations defined one nonattainment area centered in Salt Lake City to include the entirety of Salt Lake and Davis counties and a portion of Weber county. Utah proposed that Box Elder and Tooele counties be designated attainment areas (or, in the alternative, unclassifiable) in their entirety. Pursuant to the Clean Air Act's requirements, EPA then notified Utah that it intended to modify the proposed designations to, among other things, include eastern portions of Box Elder and Tooele counties within the Salt Lake City nonattainment area.

After all notifications of proposed modifications had been made to various states, EPA invited public comment prior to issuing a final designations rule. *See* Designations Recommendations: Notice of Availability and Public Comment Period, 73 Fed. Reg. 51,259 (Sept. 2, 2008). Petitioners ATK Launch Systems ("ATK), Box Elder County, Brigham City, Grantsville City, Tooele City, and the State of Utah submitted comments opposing the modification. EPA then issued its final designation rule explaining the methodology for determining designations and enumerating designations for areas across the country. Air Quality Designations for the 2006 $PM_{2.5}$ NAAQS, 74 Fed. Reg. 58,688 (Nov. 13, 2009) (codified at 40 C.F.R. Part 81) ("Designations Rule"). In that rule, consistent with the notification of modification previously issued to Utah, EPA included eastern portions of Box Elder and Tooele counties in a nonattainment area. *Id.* at 58,769-70.

ATK, a business with operations in the eastern portion of Box Elder County, petitioned this court for review of EPA's inclusion of that location in the final nonattainment area. Likewise, Tooele County, Tooele City, and Grantsville City petitioned for review of EPA's inclusion of the eastern portion of Tooele County. Finally, Box Elder County and Brigham City petitioned for review of the inclusion of the eastern portion of Box Elder County. This court consolidated the petitions. The consolidated petitions argue the modifications to Utah's proposed

designations concerning Box Elder and Tooele counties are arbitrary and capricious.

## III.  Discussion

In a motion to dismiss or to transfer the petitions, EPA raised the threshold question whether the petitions are properly adjudicated in this court or whether they belong in the D.C. Circuit under the judicial review provision of the Clean Air Act.  *See* 42 U.S.C. § 7607(b)(1).[1]  Under the Act, petitions for review of "nationally applicable regulations promulgated, or final action taken" are to be filed in the D.C. Circuit.  *Id.*  Petitions challenging any final action "which is locally or regionally applicable," however, must be filed in the court of appeals in the "appropriate circuit."  *Id.*  Finally, the Act's judicial review provision states that "[n]otwithstanding the previous sentence [concerning local or regional actions,] a petition for review of any action referred to in such sentence may be filed only in the Untied States Court of Appeals for the District of Columbia if

[1]Although the D.C. Circuit has held the Act's provision choosing among the circuit courts is a venue provision and the Supreme Court has at least suggested the same, this court need not resolve whether the question is a question of proper venue or of jurisdiction.  *See Harrison v. PPG Indus.*, 446 U.S. 578, 591 (1980); *Tex. Mun. Power Agency v. EPA*, 89 F.3d 858, 867 (D.C. Cir. 1996).  A protective petition has been timely filed in the D.C. Circuit, thus eliminating any concern about the statute of limitations, and no argument has been made that any venue objection has been waived.  This court has the power to transfer the case either way.  *See* 28 U.S.C. § 1631 (court may transfer for want of jurisdiction if in the interest of justice); *Panhandle E. Pipe Line Co. v. Fed. Power Comm'n*, 337 F.2d 249, 251-52 (10th Cir. 1964) (court has power to transfer case for improper venue).

such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination." *Id.*

The inquiry thus begins by determining if the challenged regulation is "nationally applicable" or "locally or regionally applicable." *Id.* The language of the Clean Air Act provision makes clear that this court must analyze whether the regulation itself is nationally applicable, not whether the effects complained of or the petitioner's challenge to that regulation is nationally applicable. *Id.* (assigning to the D.C. Circuit challenges to "nationally applicable regulations promulgated"). Other circuits to consider the issue have taken a similar approach. *Natural Res. Def. Council, Inc. v. Thomas*, 838 F.2d 1224, 1249 (D.C. Cir. 1988) (looking at face of rule, rather than practical effect, in determining national applicability); *see Texas v. EPA*, No. 10-60961, 2011 WL 710598, at \*3 (5th Cir. Feb. 24, 2011) (same).[2]

The EPA Designations Rule at issue here establishes "initial [$PM_{2.5}$] air quality designations for most areas in the United States." Designations Rule, 74 Fed. Reg. at 58,688. The actual designations list includes designations of areas within each state and territory in the country. *Id.* at 58,701-781. The nonattainment designation was assigned to thirty-one areas across the country,

---

[2]Because this opinion is unpublished, and therefore not precedent even in Fifth Circuit, it is cited only for its persuasive value. *See* 5th Cir. R. 47.5.4; *see also* Fed. R. App. P. 32.1(a).

areas which include portions of states with no local or regional connection to one another, such as California, Pennsylvania, and Alabama. *Id.* at 58,696. That the regulation reaches geographic areas from coast to coast and beyond is, at a minimum, a strong indicator that the regulation is nationally applicable.

In promulgating final designations, EPA also applies a uniform process and standard across the country. EPA explained that it "invited all states and tribes to submit area and boundary recommendations" and "issued guidance" concerning how to determine nonattainment designations and area boundaries. *Id.* at 59,692, 58,693. As part of its guidance, EPA "recommended nine factors . . . [it] considered relevant for designations." *Id.* at 58,693. EPA further explained its methodology in determining when an area "contributes" to a nearby violation, what constitutes a "nearby" area, how it determined where the boundaries of those areas would be drawn, and what presumptions it applied to metropolitan areas. *Id.* It also listed various types of data on which EPA relied in forming final designations. *Id.* at 58,695. All of these standards and methodologies are part of EPA's nationwide approach to giving content to the Clean Air Act's mandate that nonattainment designations be assigned to areas that contribute to a nearby NAAQS violation. *See id.* at 58,700 ("At the core of this rulemaking is EPA's interpretation of the definition of nonattainment. . . . [and] EPA used an analytic approach that it applied consistently across the U.S.").

ATK's contention that EPA's case-by-case consideration of areas and boundaries transforms a national standard to a regional or local rule is ultimately unpersuasive. That no mechanical or bright-line rule applies in these circumstances does not mean EPA holds localities to differing standards, each of which should be reviewed in a local circuit. As the D.C. Circuit explained in upholding EPA's approach to nonattainment designations, a multi-factor inquiry is not "unreasonable just because it lacks quantitative standards." *Catawba County v. EPA*, 571 F.3d 20, 39-40 (D.C. Cir. 2009) (finding totality of circumstances test as reasonable interpretation of statutory duties and that EPA consistently applied it). EPA's analytic rubric is a single interpretation of the Clean Air Act provision concerning areas that contribute to a nearby NAAQS violation.

The cases cited by ATK in which courts have concluded petitions for review of EPA actions were properly brought outside the D.C. Circuit present different considerations than the petition here.[3] In *Western Oil & Gas v. EPA*, the Ninth Circuit considered challenges to certain nonattainment designations in

---

[3]Both parties also cite much authority that does not bear on the question at hand. ATK cites numerous cases in which petitions for review of EPA actions similar to the Designations Rule were decided on the merits in regional circuits. In those cases, however, the issue of whether the action was brought in the proper circuit was never raised or discussed. *See, e.g.*, *Sharon Steel Corp. v. EPA*, 597 F.2d 377 (3d Cir. 1979); *U.S. Steel Corp v. EPA*, 595 F.2d 207 (5th Cir. 1979). Likewise, EPA cites such cases adjudicated on their merits in the D.C. Circuit in which there is no discussion of the proper forum. *See, e.g.*, *Catawba County v. EPA*, 571 F.3d 20 (D.C. Cir. 2009).

California and concluded, without analysis, that they "apply locally, not nationally." 633 F.2d 803, 807 (9th Cir. 1980). Because of unique circumstances surrounding EPA's very first designations process, the final designations at issue there were promulgated in a rule that applied to a single EPA region, consisting of Arizona, California, Nevada, Hawaii and Guam. *See id.* at 806. *Compare* 44 Fed. Reg. 16,388 (March 19, 1979) (designations rule at issue in *Western Oil & Gas* concerning a single region), *with* 74 Fed. Reg. 58,688 (designations rule at issue here concerning every state and territory). Having already issued one national rule, the final rulemaking at issue in *Western Oil & Gas* addressed "[a]dditional issues which are specific to the states in EPA Region IX." 44 Fed. Reg. 16389. Given that the face of the final rule declared itself regional in nature, and that the Ninth Circuit provided no analysis in support of its conclusion that the designations apply locally, *Western Oil & Gas* is of no help to ATK here.

In *Madison Gas & Electric Co. v. EPA*, the Seventh Circuit considered a particular company's challenge to its initial allocation of allowances under a national program creating tradeable pollution permits. 4 F.3d 529, 530 (7th Cir. 1993) Allowances are determined in part based on a plant's generating capacity, and Madison Gas contended EPA incorrectly calculated its generating capacity. *Id.* The court noted that the challenge was neither attacking a national feature of the program (an undisputably nationally applicable action) nor attacking a purely

local action such as a SIP (an undisputably regional action) but rather presented an "intermediate case." *Id.* It then concluded that because of the nature of the challenge, which was "based on an entirely local factor (Madison's generating capacity)," that the action was properly brought in the Seventh Circuit. *Id.* at 531.

Unlike the petitioners in *Madison Gas*, ATK complains of errors not limited to EPA's assessment of facts on the ground wholly within Box Elder and Tooele counties. Rather, it invokes a broad comparison between EPA's designations as to those counties and the designations of counties in other regions in an attempt to demonstrate that EPA's application of its nationwide standard was arbitrary and capricious because it leads to inconsistent outcomes in different areas of the country. The nature of the challenge here is therefore much different from that considered in *Madison Gas*, and *Madison Gas* serves as no basis for concluding that ATK's challenge is properly brought in the Tenth Circuit.[4] To the

---

[4]EPA also distinguishes *Madison Gas & Electric Co. v. EPA*, 4 F.3d 529 (7th Cir. 1993), on the basis that the regulation there contained no finding by the Administrator that the action was based on a determination of nationwide scope or effect, unlike the regulation challenged in this petition. *See* 42 U.S.C. § 7607(b)(1). Because the Designations Rule is a nationally applicable regulation and ATK's petition properly belongs in the D.C. Circuit on that basis alone, no decision need be reached concerning EPA's alternative contention that the Administrator's finding also mandates that the challenge be decided by the D.C. Circuit. Nonetheless, this court acknowledges that the D.C. Circuit has refused to transfer to the Seventh Circuit a petition challenging EPA's designations under the Ozone NAAQS on the basis of such a published finding. *Alcoa, Inc. v. EPA*, No. 04-1189, 2004 WL 2713116, at *1 (D.C. Cir. Nov. 24, 2004).

extent that *Madison Gas* suggests, however, that the manner in which a petitioner frames his challenge to a regulation may alter the court in which the suit belongs, that suggestion is inconsistent with the language of the Act's judicial review provision. *See id.* The provision assigns to the D.C. Circuit all challenges to "nationally applicable regulations," not, for instance, all national challenges or all challenges that will have a national effect. *See* 42 U.S.C. § 7607(b)(1). The nature of the regulation, not the challenge, controls.

The challenge here is more akin to challenges to so-called "SIP Calls," which the Fourth and Fifth Circuits have transferred to the D.C. Circuit. *See Texas v. EPA*, 2011 WL 710598, at *3; *W. Va. Chamber of Commerce v. Browner*, No. 98-1013, 1998 WL 827315, at *5-*7 (4th Cir. Dec. 1, 1998).[5] A SIP Call is an EPA rule calling for revision to any SIP not meeting a newly-established standard. *See Texas*, 2011 WL 710598, at *2. In issuing a SIP Call, EPA determines which states' SIPs are non-compliant and in need of revision. *See id.* Although each of the SIP Call petitions challenged the revision requirement as to a particular state, the SIP Call on its face applied the same standard to every state and mandated revisions based on that standard to states with non-conforming SIPs in multiple regions of the country. *See id.* at *3; *Browner*, 1998 WL 827315, at

---

[5]Because this opinion is unpublished, and therefore not precedent even in Fourth Circuit, it is cited only for its persuasive value. *See* 4th Cir. R.32.1; *see also* Fed. R. App. P. 32.1(a).

*7. Accordingly, those challenges were held properly brought in the D.C. Circuit. *See Texas*, 2011 WL 710598, at *5; *Browner*, 1998 WL 827315, at *8.

Like the SIP Calls, EPA's Designations Rule creates a standard that applies to the entire country. Any area falling below the standard receives the nonattainment designation and attendant consequences. EPA's listing of the designations applied to each locality does not, as ATK suggests, constitute a mere amalgamation of numerous local actions into a single rule. Rather, EPA's Designations Rule constitutes its national interpretation of Clear Air Act mandates, and any challenge thereto belongs in the D.C. Circuit.

Given this court's ruling that the petitions be transferred to the D.C. Circuit, there is no occasion to consider the parties' arguments on the merits. There is likewise no need to reach EPA's claim that no petitioner has standing to challenge the designation as to Tooele County. Although standing is jurisdictional and must be decided prior to a determination of the merits of a case, "there is no mandatory sequencing of jurisdictional issues." *Sinochem Intern. Co. v. Malay. Intern. Shipping Corp.*, 549 U.S. 422, 431 (2007) (quotation omitted) (holding a court need not resolve its own subject matter jurisdiction before dismissing a suit on the ground of *forum non conveniens*). This court may choose to transfer the petitions to the proper court under the Clean Air Act and leave EPA's standing arguments to be decided in the D.C. Circuit. *See Leroy v. Great*

-13-

*W. United Corp.*, 443 U.S. 173, 180 (1979) (venue may be addressed before personal jurisdiction).

**IV.  Conclusion**

For the foregoing reasons, the petitions are **TRANSFERRED** to the U.S. Court of Appeals for the District of Columbia Circuit.