In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 16-3398 & 17-1442

SOUTHERN ILLINOIS POWER COOPERATIVE,

*Petitioner*,

*v.*

ENVIRONMENTAL PROTECTION AGENCY
and SCOTT PRUITT, Administrator,

*Respondents*.

_____

On Motion to Dismiss or Transfer to the
U.S. Court of Appeals for the D.C. Circuit.

_____

ARGUED MAY 30, 2017 — DECIDED JULY 12, 2017

_____

Before BAUER, RIPPLE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Southern Illinois Power Cooperative seeks review of a final rule of the Environmental Protection Agency designating Williamson County, Illinois, as a nonattainment area for national air quality standards for sulfur dioxide. The rule in question is not limited to Williamson County; it makes attainment designations for 61 geographic areas spanning 24 states. The EPA moves to dismiss or

transfer the petition to the D.C. Circuit under the terms of the judicial-review provision of the Clean Air Act, which designates that circuit as the exclusive venue for review of "nationally applicable" agency actions. 42 U.S.C. § 7607(b)(1). We agree that the challenged rule is nationally applicable and therefore transfer the petition to the D.C. Circuit. Our decision conflicts with *Madison Gas & Electric Co. v. EPA*, 4 F.3d 529 (7th Cir. 1993). But *Madison Gas* is inconsistent with the text of § 7607(b)(1) and is therefore overruled.[1]

## I. Background

The Clean Air Act "establishes a comprehensive program for controlling and improving the nation's air quality through both state and federal regulation." *Sierra Club v. EPA*, 774 F.3d 383, 386 (7th Cir. 2014). The Act directs the EPA to establish National Ambient Air Quality Standards, which set the "maximum permissible atmospheric concentrations for certain harmful air pollutants." *Indiana v. EPA*, 796 F.3d 803, 804 (7th Cir. 2015); *see* 42 U.S.C. §§ 7408–7409; *Sierra Club*, 774 F.3d at 386. Within two years of revising or setting a new air quality standard, the EPA must evaluate compliance with the standard and classify geographic regions around the country as areas of "attainment" or "nonattainment" (or designate them as "unclassifiable"). 42 U.S.C. § 7407(d)(1)(A), (d)(1)(B)(i); *see ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1195 (10th Cir. 2011). In doing so the EPA solicits recommendations from the state regulators on how

---

[1] This opinion has been circulated to all judges in active service. No judge wished to hear the case en banc. *See* 7TH CIR. R. 40(e).

to designate areas within the state. If the EPA disagrees with a state's recommendation for any particular area, it notifies the state and allows an opportunity for public comment on its proposed modification. *See* § 7407(d)(1)(A), (d)(1)(B)(ii); *ATK Launch Sys.*, 651 F.3d at 1195. The EPA then promulgates a final rule listing and explaining the designations, § 7407(d)(1)(B)(i), (d)(2), which in turn affects a state's obligations in developing a state implementation plan to maintain or achieve air quality standards, *see* 42 U.S.C. §§ 7410, 7471, 7502; *ATK Launch Sys.*, 651 F.3d at 1195.

In 2010 the EPA revised the national air quality standards for sulfur dioxide. *See* Primary National Ambient Air Quality Standard for Sulfur Dioxide, 75 Fed. Reg. 35,520 (June 22, 2010) (as codified at 40 C.F.R. pts. 50, 53, and 58). The agency did not have sufficient information to complete the initial compliance designations within two years, so it took advantage of a one-year extension allowed by statute. *See* § 7407(d)(1)(B)(i). As the extended deadline approached, the EPA remained unable to complete a full list of attainment designations for the entire country, so it issued a rule containing a partial list covering 29 areas in 16 states. *See* Air Quality Designations for the 2010 Sulfur Dioxide ($SO_2$) Primary National Ambient Air Quality Standard ("Round 1 Designations"), 78 Fed. Reg. 47,191, 47,193 (Aug. 5, 2013) (as codified at 40 C.F.R. pt. 81). The EPA explained in its Round 1 Designations that the remaining designations would be forthcoming in "separate future actions." *Id.*

The Sierra Club and the National Resources Defense Council sued the agency alleging that it had failed to carry out a nondiscretionary duty under the Clean Air Act. The parties ultimately negotiated a consent decree in which the

EPA agreed to issue the remaining designations in multiple rounds by 2020. *See Sierra Club v. McCarthy*, No. 3:13-cv-3953-SI, Consent Decree (N.D. Cal. Mar. 2, 2015).

After entering the consent decree, the EPA solicited updated recommendations from the states. Illinois promptly responded. As relevant here, state regulators recommended that the EPA designate Williamson County in southern Illinois as an attainment area. The EPA reviewed the proposed designations from the state regulators and in due course announced its intention to reject their recommendation for Williamson County and instead designate it as an area of nonattainment. The EPA attached a technical-support document explaining that the modeling method used by the state regulators was flawed. The EPA solicited public comments on the proposed designation.

Southern Illinois Power Cooperative, which operates a large power plant in Williamson County, submitted public comments opposing the nonattainment designation. The Cooperative challenged the technical basis for the EPA's designation and submitted alternative modeling results showing that the area surrounding the power plant met the new air quality standard. The EPA reviewed the comments but was unmoved.

In July 2016 the EPA promulgated a final rule listing and explaining its Round 2 Designations. *See* Air Quality Designations for the 2010 Sulfur Dioxide ($SO_2$) Primary National Ambient Air Quality Standard—Round 2, 81 Fed. Reg. 45,039 (July 12, 2016) (as codified at 40 C.F.R. pt. 81). The rule contained attainment designations for 61 additional areas across 24 states, *id.* at 45,040, and included a nonattainment designation for Williamson County, *id.* at 45,047.

The Cooperative filed a timely petition for review with this court under the judicial-review provision of the Clean Air Act, § 7607(b)(1), and Rule 15(a) of the Federal Rules of Appellate Procedure. The Cooperative simultaneously asked the EPA to reconsider its designation of Williamson County as an area of nonattainment. The EPA denied reconsideration, and the Cooperative petitioned for review of that decision as well. We consolidated the two petitions. There is no need to distinguish between the two, so we'll refer to them as a single petition.

The EPA moved to dismiss the petition for lack of jurisdiction or improper venue under § 7607(b)(1), which establishes venue rules for judicial review of EPA actions under the Clean Air Act.[2] Alternatively, the agency moved to transfer the petition to the D.C. Circuit to be consolidated with six other petitions challenging the Round 2 Designations and a subsequent supplement to the rule.[3] *See Masias v. EPA*, Nos. 16-1314, 16-1318, 16-1384, 16-1424, 17-1053 & 17-1055 (D.C. Cir.). The EPA reminded us that in 2013 we transferred to the D.C. Circuit a similar petition challenging the Round 1 Designations for sulfur dioxide. *See Ameren-*

---

[2] The EPA takes no position on whether § 7607(b)(1) is jurisdictional or simply dictates venue. We have already answered that question: "[T]he venue and filing provisions of § 7607(b) are not jurisdictional." *Clean Water Action Council of Ne. Wis., Inc. v. EPA*, 765 F.3d 749, 751 (7th Cir. 2014). Nonetheless, the venue provision is a "binding rule" and the EPA invokes its benefit, so we treat it as mandatory. *See id.* at 753; *see also Eberhart v. United States*, 546 U.S. 12, 19 (2005) (explaining that claim-processing rules "assure relief to a party properly raising them").

[3] The EPA explained that it also intends to move to transfer to the D.C. Circuit two other petitions currently before the Fifth Circuit that challenge the supplement.

*Energy Res. Generating Co. v. EPA*, No. 13-2959 (7th Cir. Dec. 18, 2013) (granting, over the petitioner's objection, the EPA's motion to transfer); *see also Treasure State Res. Indus. Ass'n v. EPA*, 805 F.3d 300, 303 (D.C. Cir. 2015) (consolidating and denying on the merits the petitioners' challenges to Round 1 Designations); *Dynegy Midwest Generation v. EPA*, No. 05-1536 (7th Cir. May 26, 2005) (transferring to the D.C. Circuit, over the petitioner's objection, the challenge to the EPA's fine-particulate-matter designations).

The Cooperative opposed the motion, relying heavily on our decision in *Madison Gas*. After reviewing the EPA's motion and the Cooperative's response, we noted a conflict between the approach we took in *Madison Gas* and the text of § 7607(b)(1). We noted as well that *Madison Gas* has drawn criticism from other circuits. *See, e.g., ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1198–99 (10th Cir. 2011); *Texas Mun. Power Agency v. EPA*, 89 F.3d 858, 866–67 (D.C. Cir. 1996). Accordingly, we ordered full briefing on the proper interpretation of the Clean Air Act's venue provision and asked the parties to address whether *Madison Gas* was correctly decided, and if not, whether it should be overruled. The briefs are now in, the motion has been orally argued, and the matter is ready for decision.

## II. Analysis

The Clean Air Act assigns judicial review of EPA actions to either the D.C. Circuit or the appropriate regional circuit based on the nature of the agency action in question. The Act's venue provision separates reviewable agency actions—typically, final rules—into three distinct categories and allocates venue accordingly (the statute is quite verbose, so

we paraphrase here and quote only the key operative language):

- a petition for review of a "nationally applicable" final agency action "may be filed *only* in the United States Court of Appeals for the District of Columbia";

- a petition for review of a final agency action that is "locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit"; *except that*

- a petition for review of a "locally or regionally applicable" agency action *must* be filed in the D.C. Circuit *if* the agency action "is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination."

§ 7607(b)(1) (emphases added); *see Texas v. EPA*, 829 F.3d 405, 418 (5th Cir. 2016).

Under the straightforward (if wordy) statutory text, venue depends entirely on—and is fixed by—the nature of the agency's action; the scope of the petitioner's challenge has no role to play in determining venue. The D.C. Circuit is the exclusive venue for review of all "nationally applicable" final EPA actions under the Act. The regional circuits are the proper fora for review of "locally or regionally applicable" final EPA actions, subject to an exception: If the EPA Administrator issues a published finding that a locally or regionally applicable agency action has "nationwide scope or effect," venue lies in the D.C. Circuit.

This case clearly falls in the first basket. The Cooperative seeks review of the EPA's Round 2 Designations, a final rule

of broad geographic scope containing air quality attainment designations covering 61 geographic areas across 24 states—from New York to Hawaii—and promulgated pursuant to a common, nationwide analytical method. A rule with these characteristics is "nationally applicable" within the meaning of § 7607(b)(1), so venue lies exclusively in the D.C. Circuit. *See ATK Launch Sys.*, 651 F.3d at 1197 (holding that a similar air quality designation rule with wide geographic reach, promulgated pursuant to "a uniform process and standard across the country," is "nationally applicable" under § 7607(b)(1) and review lies in the D.C. Circuit).

The Cooperative insists that the Round 2 Designations are just an amalgamation of many different locally or regionally applicable agency actions and notes that its petition challenges only one: the EPA's designation of Williamson County as a nonattainment area. That's not an accurate description of the petition, which is just a one-paragraph pleading seeking review of the rule and attaching a copy. There are no details in the petition about the scope or nature of the Cooperative's challenge; that information has come to the fore in the briefing on the EPA's motion. More importantly, the Cooperative's petition-focused approach to the venue question cannot be squared with the plain language of § 7607(b)(1), which assigns judicial review to the D.C. Circuit or the regional circuits based on the nature of the *agency action* in question, *not* the nature or scope of the petition for review. *Id.* at 1199 ("The nature of the regulation, not the challenge, controls" the venue determination under § 7607(b)(1).). Because the Round 2 rule is, on its face, nationally applicable, venue lies in the D.C. Circuit.

The Cooperative's argument to the contrary rests largely on our decision in *Madison Gas*. There we held that a petition challenging "an element of a national program" based on an "entirely local factor" could be brought in the regional circuit court. 4 F.3d at 530–31. Madison Gas, a Wisconsin electrical utility, sought review of a final EPA rule that allocated tradable pollution allowances to electrical generating facilities across the country. *Id.* at 530. This national system, designed to curb acid rain, was based on each facility's generating capacity, and Madison Gas contested the EPA's calculation of the generating capacity at three of its Wisconsin plants. *Id.* The EPA moved to dismiss for improper venue, arguing that because the rule in question was clearly nationally applicable—it allocated pollution allowances nationwide—the D.C. Circuit was the exclusive venue for judicial review. *Id.*

We rejected the EPA's argument, reasoning that "[i]f Madison were challenging a national feature of the acid-rain program, such as the tradability of emission allowances, it would be plain that its challenge could be brought only in the D.C. Circuit, even if the impact of the program varied greatly across the country." *Id.* And "[i]t would be equally clear that the challenge could be brought only in a regional circuit if the challenge were to a state implementation plan or some other regulation avowedly local or regional rather than national in its scope." *Id.* The utility's petition, we said, was "the intermediate case":

> Madison is challenging an element of a nation-
> al program—for the program involves allocat-
> ing allowances to all the electrical generating
> plants in the nation, and all the allocations are

> listed … in a single table in the regulations—
> but the challenge is based upon an entirely lo-
> cal factor (Madison's generating capacity) and
> if successful will have no impact on the overall
> program except insofar as the award of addi-
> tional allowances might pierce the national
> ceiling. It is only the latter factor that makes the
> EPA's motion to dismiss colorable, but we
> think it too speculative to warrant forcing the
> case to the D.C. Circuit.

*Id.* at 530–31.

It should be clear from our earlier discussion of the lan-guage of § 7607(b)(1) that this "intermediate case" approach has no foundation in the statute. Indeed, the analytical method adopted in *Madison Gas* stands in direct conflict with the actual text of the venue provision, which (to repeat) focuses entirely on the nature of the agency action in ques-tion (is the action nationally applicable or locally or regional-ly applicable?) and omits any reference to the scope or nature of the petitioner's challenge. A petition-centric meth-od for determining venue—like that announced in *Madison Gas*—is flatly inconsistent with the actual terms of § 7607(b)(1).

The Tenth Circuit noted this flaw in our reasoning in *ATK Launch Systems*. There the petitioners sought review of a final rule that—much like the rule at issue in this case—listed attainment and nonattainment designations for the EPA's air quality standards (in that case it was the agency's 2009 standards for fine particulate matter). 651 F.3d at 1195. Though the petitioners contested the nonattainment designa-tions of just two counties in Utah, *id.*, the rule in question

"enumerate[ed] designations for areas across the country," *id.* at 1196. The EPA moved to dismiss or transfer the petition, arguing that the rule was nationally applicable and the D.C. Circuit was the exclusive forum for judicial review. *Id.* at 1195.

The Tenth Circuit agreed and transferred the petition, explaining that "[t]he language of [the venue] provision makes clear that this court must analyze whether the regulation itself is nationally applicable, not whether the effects complained of or the petitioner's challenge to that regulation is nationally applicable." *Id.* at 1197. The court reasoned: "That the regulation reaches geographic areas from coast to coast and beyond is, at a minimum, a strong indicator that the regulation is nationally applicable." *Id.* The court noted another key indicator of national applicability: The EPA had applied "a uniform process and standard across the country" in promulgating the nationwide rule. *Id.* The Tenth Circuit went on to consider and reject the "intermediate case" approach announced in *Madison Gas*:

> To the extent that *Madison Gas* suggests … that the manner in which a petitioner frames his challenge to a regulation may alter the court in which the suit belongs, that suggestion is inconsistent with the language of the Act's judicial review provision. … The provision assigns to the D.C. Circuit all challenges to "nationally applicable regulations," not, for instance, all national challenges or all challenges that will have national effect. *See* 42 U.S.C. § 7607(b)(1). The nature of the regulation, not the challenge, controls.

*Id.* at 1199.

In a similar vein, the D.C. Circuit has remarked that the distinction drawn in *Madison Gas* is "rather elusive" in practice. *Texas Mun. Power*, 89 F.3d at 867. Because the procedural posture of *Texas Municipal Power* did not require the D.C. Circuit to decide whether to accept or reject the approach we took in *Madison Gas*, the court considered the matter no further.

We might be able to avoid a collision with *Madison Gas* if this case could be meaningfully distinguished. It cannot be. Both *Madison Gas* and this case involve EPA rules of national applicability that explain and list in table format the agency's determinations about areas and entities across the country: here, the sulfur-dioxide attainment designations for 61 geographic areas in 24 states; in *Madison Gas*, the allocation of acid-rain allowances to utilities in 47 states and the District of Columbia. *Madison Gas*, 4 F.3d at 530; *see* Acid Rain Allowance Allocations and Reserves, 58 Fed. Reg. 15,634, 15,651–15,704 (Mar. 23, 1993) (as codified at 40 C.F.R. pts. 72, 73, and 75). The two cases are materially the same. If we apply the petition-centric approach of *Madison Gas*, the case may remain in this circuit; if we apply § 7607(b)(1) as written, the case must be shipped off to the D.C. Circuit.

So a confrontation with *Madison Gas* cannot be avoided. We now conclude that the approach announced in that case cannot be reconciled with the plain text of § 7607(b)(1). By its terms, the statute allocates venue to the D.C. Circuit or the regional circuits based *solely* on the nature of the agency action in question. If the challenged rule is "nationally applicable," the D.C. Circuit is the exclusive forum for judicial review. If the challenged rule is "locally or regional-

ly applicable," venue lies in the appropriate regional circuit *unless* the EPA Administrator has published a finding that the rule is "based on a determination of nationwide scope or effect," in which case venue lies in the D.C. Circuit. The text of the statute leaves no room for an intermediate case; there is no explicit or implicit exception for challenges to nationally applicable rules based on local or regional "factors" or "effects."

It's worth noting that the Cooperative does not defend the reasoning in *Madison Gas*, relying instead on the principle that *stare decisis* carries special force in the domain of statutory interpretation. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2008). That's an accurate statement of the doctrine, but the principle is not without limits. As we have shown, *Madison Gas* directly contradicts the venue statute's plain text; the petition-centered approach adopted in that case allows review of a single, nationally applicable EPA rule in *both* the D.C. Circuit *and* the regional circuits (based on local factors or effects). Under that approach, 12 circuit courts could rule on issues arising from a single, national EPA rule, utterly defeating the statute's obvious aim of centralizing judicial review of national rules in the D.C. Circuit.

*Madison Gas* also introduces needless uncertainty into the determination of venue, where the need for clear rules is especially acute. A petition for review of an EPA action is not normally accompanied by a statement of the basis for the petitioner's challenge. As we've noted, the Cooperative's petition did not contain such a statement; it was a bare-bones, one-page pleading simply citing the EPA rule, attaching a copy, and asking for judicial review. If, as *Madison Gas*

implicitly holds, the nature and scope of the petitioner's challenge dictates the proper forum for judicial review, then resolving venue questions will require close examination of the specific grounds of each challenge, spawning extensive venue litigation (as this case shows).

The ultimate outcome in *Madison Gas* demonstrates the substantive risks of this approach to venue. Despite our initial conclusion in *Madison Gas* that the petitioner's challenge was based on an entirely local factor, our final decision on the merits had much broader implications. Indeed, at the merits phase, we rejected the EPA's interpretation of the statute and vacated the allocation of pollution allowances to the petitioner's facilities. *See Madison Gas & Elec. Co. v. EPA* ("*Madison Gas II*"), 25 F.3d 526, 529–30 (7th Cir. 1994). In so doing, we called into question the EPA's interpretation of the statute as it applied to other facilities around the country. We acknowledged that our decision may require "taking away some other utility's allowances" if, as a consequence of our decision, the national ceiling for allowances were pierced. *Id.* at 528. The EPA tells us that because of our decision in *Madison Gas II*, the agency did in fact revise the allowances for other facilities across the country to avoid exceeding the national cap.

The principle of *stare decisis* does not require us to refuse to correct our own mistakes. Regrettably, *Madison Gas* was mistaken. And here, the structural significance of the Clean Air Act's venue provision makes the case for overruling especially strong. Overlapping, piecemeal, multicircuit review of a single, nationally applicable EPA rule is potentially destabilizing to the coherent and consistent interpreta-

tion and application of the Clean Air Act. *Madison Gas* is overruled.

Our decision today does not disturb deeply established precedent; we've cited *Madison Gas* in just one published opinion. *See New York v. EPA*, 133 F.3d 987, 990 (7th Cir. 1998). In that case, three northeastern states filed a petition for review challenging an EPA action exempting several Great Lakes states from nitrogen-oxide emission regulations. *Id.* at 989. We concluded that review was proper in this court because the exemption in question "is limited to a cluster of states; it thus is regional in a literal sense." *Id.* at 990 (citing *Madison Gas*, 4 F.3d 529). The citation to *Madison Gas* is a bit mysterious; our decision in *New York* did not follow the petition-focused method adopted in that case. Quite the contrary: We said that "[d]etermining whether an action by the EPA is regional or local on the one hand or national on the other should depend on the location of the persons or enterprises that the action regulates rather than on where the effects of the action are felt." *Id.* This mode of analysis keeps the focus on the nature of the agency's action, not the scope of the petition, and thus is fully consistent with the text of § 7607(b)(1).

Because the Cooperative seeks review of a nationally applicable EPA rule, this petition belongs in the D.C. Circuit.

PETITION TRANSFERRED.