# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2017

Lyle W. Cayce
Clerk

_____

No. 17-60088

_____

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; LUMINANT GENERATION COMPANY, L.L.C.; BIG BROWN
POWER COMPANY, L.L.C.; SANDOW POWER COMPANY, L.L.C.;
LUMINANT MINING COMPANY, L.L.C.,

> Petitioners

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; SCOTT
PRUITT, in his official capacity as Administrator of the United States
Environmental Protection Agency,

> Respondents

_____

Petitions for Review of an Order of the
Environmental Protection Agency
EPA No. 81 Fed. Reg. 89,870

_____

Before OWEN, ELROD, and COSTA, Circuit Judges.

PER CURIAM:*

Petitioners challenge the Environmental Protection Agency's designation that three areas in Texas did not attain air quality standards for

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60088

sulfur dioxide.  The EPA contends this challenge must be litigated in the United States Court of Appeals for the District of Columbia Circuit.  But the EPA has not shown Petitioners are seeking review of an agency action that is either nationally applicable or based on a determination of nationwide scope or effect.    The EPA's motion therefore is denied without prejudice to reconsideration by the merits panel.

## I.

The Clean Air Act directs the EPA to establish national ambient air quality standards by setting maximum permissible concentrations of various harmful air pollutants.  42 U.S.C. §§ 7408–7409.  Within three years of establishing or revising a national ambient air quality standard for a pollutant, the EPA must evaluate compliance with the standard and designate regions of the United States as either "attainment," "non-attainment," or "unclassifiable."  42 U.S.C. § 7407(d)(1)(A), (d)(1)(B)(i).  The EPA solicits recommendations from each state on what to designate regions within the state.  *Id.* § 7407(d)(1)(A).  If the EPA disagrees with the state's designations, it notifies the state but "may make such modifications [to the designations] as the Administrator deems necessary."  *Id.* § 7407(d)(1)(B)(ii).  If the EPA ultimately designates a particular region as "non-attainment," the state must submit a state implementation plan that includes measures to meet the new standard.  *Id.* § 7514.

The EPA revised the national ambient air quality standard for sulfur dioxide in 2010.  *See* Primary National Ambient Air Quality Standard for Sulfur Dioxide, 75 Fed. Reg. 35,520, 35,525 (June 22, 2010) ("Sulfur Dioxide Standard") (as codified at 40 C.F.R. pts. 50, 53, 58).  In August 2013, the EPA issued "Round 1" of designations under the revised standard, designating some regions in 16 states.  *See* Air Quality Designations for the 2010 Sulfur Dioxide (SO$_2$) Primary National Ambient Air Quality Standard, 78 Fed. Reg. 47,191

No. 17-60088

(Aug. 5, 2013) ("Round 1 Designations") (as codified at 40 C.F.R. pt. 81). Although the rule announcing the revised standard stated that the EPA "expect[ed] to use a hybrid analytic approach that combines the use of monitoring and modeling to assess compliance" with the new standard, the Round 1 designations only relied on available air quality monitoring data. Sulfur Dioxide Standard, 75 Fed. Reg. at 35,573; Round 1 Designations, 78 Fed. Reg. at 47,191. Because EPA did not have sufficient data to designate additional areas, it stated that it would continue to make designations "in separate future actions." Round 1 Designations, 78 Fed. Reg. at 47,191.

The Sierra Club and the National Resources Defense Council sued to compel the EPA to complete designations for the rest of the country, arguing that the EPA had failed to fulfil a nondiscretionary duty under the Clean Air Act. A consent decree resolving the case required the EPA to issue final designations for regions with the largest sources of sulfur dioxide by July 2, 2016. *Sierra Club v. McCarthy*, No. 3:13-cv-3953, Consent Decree, ECF No. 163 (N.D. Cal. Mar. 2, 2015). The EPA proposed these "Round 2" designations in March 2016, covering 66 areas in 24 states, including the four Texas regions at issue in this case. *See* EPA Responses to Certain State Designation Recommendations for the 2010 Sulfur Dioxide National Ambient Air Quality Standard, 81 Fed. Reg. 10,563 (Mar. 1, 2016) (as codified at 40 C.F.R. pt. 81). In July 2016, after accepting public comment on its proposed designations, the EPA issued a final rule making designations for only 61 of those areas. *See* Air Quality Designations for the 2010 Sulfur Dioxide ($SO_2$) Primary National Ambient Air Quality Standard—Round 2, 81 Fed. Reg. 45,039 (July 12, 2016) ("Initial Round 2 Designations") (as codified at 40 C.F.R. pt. 81). The final rule included designations for eight regions in Texas, but not the four at issue here. *See* Air Quality Designations for the 2010 Sulfur Dioxide ($SO_2$) Primary National Ambient Air Quality Standard—Supplement to Round 2 for Four

3

No. 17-60088

Areas in Texas, 81 Fed. Reg. 89,870, 89,871 (Dec. 13, 2016) ("Round 2 Supplement") (as codified at 40 C.F.R. pt. 81).

Pursuant to an agreed modification to the consent decree, the EPA delayed issuing the Round 2 designations for the four regions at issue—areas in Texas surrounding the Big Brown, Martin Lake, Monticello, and Sandow power plants. Joint Notice of Stipulated Extension, *Sierra Club v. McCarthy*, No. 3:13-cv-3953, ECF No. 180 (N.D. Cal. Oct. 28, 2016). Approximately five months later, the EPA issued a "Supplement to Round 2 for Four Areas in Texas" making those designations. Round 2 Supplement, 81 Fed. Reg. at 89,870. Contrary to Texas's recommendations and after providing the required notice to Texas, the EPA designated three of the regions "nonattainment" and thus triggered an obligation for Texas to develop and submit revised state implementation plans. *Id.*

The Round 2 designations, whether published in July 2016 or December 2016, rely on all available information, including monitoring and modeling data. *See* Initial Round 2 Designations, 81 Fed. Reg. at 45,041; Round 2 Supplement, 81 Fed. Reg. at 89, 871. They also all involve the same five-factor test to determine the boundaries for each air quality region.

Petitioners[1] challenged the Supplement in this court. They filed the same challenge to the Supplement in the D.C. Circuit, which they have told that court was done as a "protective matter." *Masias v. EPA*, 17–1053 & 17–1055 (D.C. Cir.). Their D.C. Circuit suit has been consolidated with a case the Sierra Club filed challenging the Supplement as overly lax in enforcing the new sulfur dioxide standard, and the challenges to the Supplement have been consolidated with a number of challenges to the July 2016 Initial Round 2

---

[1] Petitioners are the State of Texas, the Texas Commission on Environmental Quality, Luminant Generation Company LLC, Big Brown Power Company LLC, Sandow Power Company LLC, and Luminant Mining Company LLC.

## No. 17-60088

Designations.  *See Masias v. EPA*, Nos. 16–1314, 16–1318, 16–1384, 16–1424, 17–1173 & 17–1174 (D.C. Cir.).  No party has moved to dismiss or transfer the D.C. Circuit actions.  Petitioners recently, however, asked the D.C. Circuit to sever the petitions challenging the Supplement and hold them in abeyance pending the outcome of the procedural motion we are considering.

## II.

In that motion, the EPA argues we must dismiss or transfer the petition under 42 U.S.C. § 7607(b)(1), which establishes venue rules for judicial review of EPA actions under the Clean Air Act.[2]  The venue provision separates petitions for review into three categories:

> (1) A petition for review of . . . any . . . *nationally applicable regulations promulgated, or final action taken*, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia.
> (2) A petition for review of . . . any . . . final action of the Administrator under this chapter . . . *which is locally or regionally applicable* may be filed only in the United States Court of Appeals for the appropriate circuit.
> (3) Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia *if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination.*

42 U.S.C. § 7607(b)(1) (emphasis added).

In other words, venue depends on the nature of the agency's action.  The D.C. Circuit is the exclusive venue for review of all "nationally applicable" final EPA actions.  Regional circuits are the proper venue for review of "locally or

---

[2] Because no party has cited 28 U.S.C. § 2112, or briefed its applicability, we do not consider it in ruling on the motion to transfer.  If applicable, 28 U.S.C. § 2112 would pertain to whether this court or the D.C. Circuit should decide the threshold question of where venue lies as a petition for review of the Supplement was first filed in that court.

regionally applicable" final EPA actions, unless such an action is based on a determination of "nationwide scope or effect," in which case venue lies in the D.C. Circuit. As a result, the venue provision "facilitat[es] the orderly development of the basic law" under the Clean Air Act: it ensures the D.C. Circuit reviews "matters on which national uniformity is desirable," thus avoiding "piecemeal review of national issues in the regional circuits, which risks potentially inconsistent results." *Texas v. EPA*, 2011 WL 710598, at *4 (5th Cir. 2011).

The EPA's Administrator stated that the Supplement was nationally applicable and based on a determination of nationwide scope or effect. Round 2 Supplement, 81 Fed. Reg. at 89,875. But we must independently determine venue without deference to the EPA. *See Texas v. EPA*, 829 F.3d 405, 417–18 (5th Cir. 2016). Our review boils down to two questions: (1) is the Supplement nationally applicable; and (2) if not, is it based on a determination of nationwide scope or effect?

## A.

Applicability turns on "the legal impact of the action as a whole." *Id.* at 419. To determine whether a final action is nationally applicable, "this Court need look only to the face of the rulemaking, rather than to its practical effects." *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 881 (D.C. Cir. 2015) (citation omitted). The analysis focuses on the "location of the persons or enterprises that the action regulates rather than on where the effects of the action are felt." *Texas*, 2011 WL 710598, at *3. Thus, when a final rule, by its terms, regulates only people or entities in a single judicial district, the action is not nationally applicable. *See Dalton Trucking*, 808 F.3d at 881 (finding agency rules that, on their face, "regulate only nonroad engines and vehicles that are owned or operated *in* California" were not nationally applicable). On its face, the Supplement establishes designations for only areas in Texas and

its direct legal impacts are limited to Texas. We are not aware of any case holding that a rule that on its face regulates entities and conduct in a single state is nationally applicable.

Perhaps in recognition of this, the EPA urges us to consider the Supplement together with the July 2016 initial Round 2 designations. If we were to consider the Round 2 designations and Supplement as comprising a single "action," transfer might well be appropriate. Indeed, the Seventh Circuit recently transferred a challenge to the July 2016 Round 2 designations to the D.C. Circuit, finding the rule nationally applicable. *S. Ill. Power Coop. v. EPA*, 863 F.3d 666 (7th Cir. 2017). The court relied on the rule's "broad geographic scope" and that it was "promulgated pursuant to a common, nationwide analytical method." *Id.* at 671; s*ee also Texas*, 2011 WL 710598, at *3 (holding an action disapproving state implementation plans from thirteen states and issuing a call requiring states to submit new state implementation plans was nationally applicable).

But the "action" we consider in determining venue is the final rule "that the petitioner seeks to prevent or overturn." *Texas*, 829 F.3d at 419. The EPA made the unusual choice to publish four Texas designations in a separate final rule, and that rule is the only one Petitioners challenge. The EPA cites no caselaw supporting the view that a supplement published as a separate final rule should be viewed as the same action as the rule it supplemented. It points to one prior instance when it issued designations under a national ambient air quality standard through two separate final rules—the rule and supplemental rule—which were reviewed together in the D.C. Circuit. *Miss. Comm'n on Envtl. Quality v. EPA*, 790 F.3d 138 (D.C. Cir. 2015). In that case, the D.C. Circuit assessed challenges to both an initial action assigning designations for numerous regions and a supplement designating twelve additional areas located in the Seventh Circuit. *Id.* at 149. But no party moved to dismiss or

transfer the challenge to the supplement, so that case does not directly speak to the issue we confront.

By contrast, in *Western Oil & Gas Association v. EPA,* 633 F.2d 803, 807 (9th Cir. 1980), the Ninth Circuit considered a challenge to nonattainment designations for regions in California. *See ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1198 (10th Cir. 2011) (discussing *Western Oil & Gas*). "Because of unique circumstances surrounding EPA's very first designations process, the final designations at issue there were promulgated in a rule that applied to a single EPA region, consisting of Arizona, California, Nevada, Hawaii, and Guam" and addressed "issues which are specific to th[ose] states." *Id.*; Air Quality Control Regions, Criteria, and Control Techniques, 44 Fed. Reg. 16,388 (March 19, 1979). Thus, the Ninth Circuit concluded that they "appl[ied] locally, not nationally." *W. Oil & Gas*, 633 F.2d at 807. In short, to the extent cases address the issue, they focus on the final action being challenged. We will not depart from that approach.

Nor does it matter that, as the EPA points out, the substance of the Petitioners' challenge may be applicable to all of the Round 2 designations. Courts applying the Clean Air Act's venue provision focus on the nature of the regulation, not the challenge. *See Texas*, 829 F.3d at 419; *S. Ill. Power Coop.*, 863 F.3d at 670 ("The scope of the petitioner's challenge has no role to play in determining venue."). We therefore conclude that the Supplement is not "nationally applicable."

## B.

As the challenged rule is only "locally or regionally" applicable, the "default" venue is in this regional circuit. *Texas*, 829 F.3d at 419. The D.C. Circuit has venue only if the EPA establishes that the local rule is "based on a determination of nationwide scope or effect." *Id*. (citing 42 U.S.C. § 7607(b)(1)). Determinations are "the justifications the agency gives for the action and . . .

can be found in the agency's explanation of its action." *Id*. "Because the statute speaks of the determinations the action 'is based on,' the relevant determinations are those that lie at the core of the agency action," not determinations that are "peripheral or extraneous." *Id*. Determinations are not of nationwide scope or effect if they are "intensely factual determinations" such as those "related to the particularities of the emissions sources in Texas." *Id*. at 421. The context-specific question is not an easy one in this case.

The parties contend that different aspects of the Supplement lie at its core. The rule itself says "at the core of . . . this supplemental final action is the EPA's interpretation of the definitions of nonattainment, attainment and unclassifiable under section 107(d)(1) of the CAA, and its application of that interpretation to areas across the country." Round 2 Supplement, 81 Fed. Reg. at 89,875. Petitioners maintain the court should instead look at the final rule's statement that "[t]he designations are based on the weight of evidence for each area, including available air quality monitoring data and air quality modeling," an inquiry Petitioners maintain is highly fact specific and particularized. *Id*. at 89,870. They thus contend that the Supplement depended on core determinations that are different from those in the initial July 2016 Round 2 designations so that review of the former in this court would not conflict with the D.C. Circuit's review of the latter.

The EPA responds that its decision to rely on "the weight of the evidence" especially including "air quality modeling" is itself a determination of nationwide scope or effect. But beyond these generalizations, the EPA has not provided adequate detail on how the Supplement rests on determinations of larger importance instead of particularized factual findings about air quality in certain regions in Texas.

At this time we are not convinced that the Supplement is based on determinations of nationwide scope or effect. It is possible, however, that the

No. 17-60088

merits briefing will provide greater clarity on what determinations lie at the Supplement's core, by, for example, illuminating that the key determinations in the rule are determinations that specific methodologies are appropriate or preferable for assessing sulfur dioxide levels nationwide, as opposed to fact-specific assessments of sulfur dioxide levels in the four Texas regions. In that case, the merits panel should not be constrained from revisiting the issue.

**\* \* \***

IT IS ORDERED that Respondents Scott Pruitt and the EPA's opposed motion to dismiss the petitions for review or transfer the petitions to the United States Court of Appeals for the District of Columbia Circuit is DENIED without prejudice to the merits panel reconsidering whether the "Supplement to Round 2 for Four Areas in Texas" is based on a determination of nationwide scope or effect.

IT IS FURTHER ORDERED that Respondents Scott Pruitt and the EPA's unopposed motion to file a corrected reply to responses to the motion is GRANTED.