[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-11617

_____

HUNT REFINING COMPANY,

Petitioner,

*versus*

U.S. ENVIRONMENTAL PROTECTION AGENCY,

Respondent.

_____

Petitions for Review of a Decision of the
Environmental Protection Agency
Agency No. EPA-420-R-22-005

_____

2                    Opinion of the Court                    22-11617

_____

No. 22-12535

_____

HUNT REFINING COMPANY,

Petitioner,

*versus*

U.S. ENVIRONMENTAL PROTECTION AGENCY,

Respondent.

_____

Petitions for Review of a Decision of the
Environmental Protection Agency
Agency No. EPA-420-R-011

_____

Before JORDAN, LAGOA, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

The Clean Air Act's Renewable Fuel Standard (RFS) program requires most domestic oil refineries to blend a certain amount of renewable fuels into the transportation fuels they produce each year.  *See* 42 U.S.C. § 7545(o)(2).  The program allows small refineries to petition the Environmental Protection Agency

for an exemption from those blending requirements in cases where compliance would cause the refineries "disproportionate economic hardship." *Id.* § 7545(o)(9)(B).

The EPA denied Hunt Refining Company's petitions for hardship exemptions from the RFS program, and Hunt petitioned this Court for review. The EPA has moved to dismiss or transfer venue under the Clean Air Act's judicial review provision, 42 U.S.C. § 7607(b)(1), contending that Hunt's petitions should have been filed in the United States Court of Appeals for the District of Columbia. And they should have been.

## I.

In 2005 and 2007, Congress amended the Clean Air Act to establish the RFS program. *See* Energy Policy Act of 2005, Pub. L. No. 109-58, § 1501, 119 Stat. 594, 1067; Energy Independence and Security Act of 2007, Pub. L. No. 110-140, §§ 201–02, 121 Stat. 1492, 1519–28 (codified at 42 U.S.C. § 7545(o)). The program was part of a larger effort to "increase the production of clean renewable fuels." Energy Independence and Security Act, preamble, 121 Stat. at 1492. Under the program, all gasoline sold in the United States must contain certain amounts of "renewable fuel, advanced biofuel, cellulosic biofuel, [or] biomass-based diesel." 42 U.S.C. § 7545(o)(2)(A)(i).

Congress set the annual volume requirements for those renewable fuels through 2022 and instructed the EPA to set the volume requirements for years after 2022. *Id.* § 7545(o)(2)(B)(i)–(ii). It also directed the EPA to promulgate regulations to ensure that the

gasoline sold in the United States each year contains the required volumes of renewable fuel.  *Id.* § 7545(o)(2)(A)(i), (3)(B).  In its implementing regulations, the EPA identified oil refineries and importers as the parties responsible for complying with the RFS program.  40 C.F.R. § 80.1406.

Concerned that the RFS obligations could unfairly burden small refineries, Congress gave all small refineries an exemption from the RFS program through 2010.[1]  42 U.S.C. § 7545(o)(9)(A)(i); *see HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2175–76 (2021).  It directed the EPA to extend a small refinery's exemption for at least two more years if a study by the Department of Energy determined that the refinery "would be subject to a disproportionate economic hardship if required to comply" with the RFS program.  42 U.S.C. § 7545(o)(9)(A)(ii); *see also* 40 C.F.R. § 80.1441(e)(1).  And Congress also provided that "[a] small refinery may at any time petition the [EPA] for an extension of the exemption . . . for the reason of disproportionate economic hardship."  42 U.S.C. § 7545(o)(9)(B)(i).

Hunt Refining Company operates a small refinery in Tuscaloosa, Alabama.  It has applied for a hardship exemption each year since 2011, and until 2018, the EPA had always granted Hunt the requested exemption.

---

[1] A "small refinery" is "a refinery for which the average aggregate daily crude oil throughput for a calendar year . . . does not exceed 75,000 barrels."  42 U.S.C. § 7545(o)(1)(K); *see also* 40 C.F.R. § 80.1401.

In 2019 the EPA acted on 36 hardship exemption petitions for RFS compliance year 2018, granting 31 (including Hunt's) and denying five.  Several refineries and a renewable fuel producer petitioned the D.C. Circuit for review.  *See Sinclair Wyo. Refin. Co. v. EPA*, No. 19-1196 (D.C. Cir. filed Sept. 20, 2019).  At the EPA's request, the D.C. Circuit remanded the EPA's decision on the 2018 exemption petitions so that the agency could reconsider the petitions in light of intervening decisions from the Tenth Circuit, *Renewable Fuels Ass'n v. EPA*, 948 F.3d 1206 (10th Cir. 2020), and from the Supreme Court, *HollyFrontier Cheyenne Refin., LLC*, 141 S. Ct. 2172 (2021).  *See Sinclair Wyo. Refin. Co.*, No. 19-1196 (D.C. Cir. Dec. 8, 2021).

In April 2022 the EPA on remand from the D.C. Circuit denied all 36 hardship exemption petitions for compliance year 2018, concluding that none of the petitioning refineries had shown disproportionate economic hardship caused by compliance with the RFS program.  In reaching its decision the EPA applied a revised interpretation of § 7545(o)(9) and a new economic theory that it determined was "applicable to all small refineries no matter the location or market in which they operate."

In June 2022 the EPA issued a nearly identical decision that denied 69 pending hardship exemption petitions (including Hunt's petitions for compliance years 2019, 2020, and 2021) for the same reasons.

6                    Opinion of the Court                    22-11617

Hunt petitioned this Court for review of the EPA's April and June 2022 decisions denying its petitions.  The EPA responded by moving to dismiss or transfer Hunt's petitions to the D.C. Circuit.

## II.

42 U.S.C. § 7607(b)(1) is the Clean Air Act's judicial review provision.  It provides that challenges to "nationally applicable" final actions taken by the EPA "may be filed only in" the United States Court of Appeals for the District of Columbia, while challenges to "locally or regionally applicable" EPA final actions "may be filed only in" the appropriate regional circuit court of appeals. 42 U.S.C. § 7607(b)(1).  But if a locally or regionally applicable action is "based on a determination of nationwide scope or effect," and if, in taking that action, "the [EPA] Administrator finds and publishes that such action is based on such a determination," a challenge to that action must be filed in the D.C. Circuit.[2]  *Id.*; *see also RMS of Ga., LLC v. EPA*, 64 F.4th 1368, 1372 (11th Cir. 2023).

The EPA contends that Hunt should have filed its petitions for review in the D.C. Circuit because the challenged denial actions either were "nationally applicable" or, if locally applicable, are "based on a determination of nationwide scope or effect" made and published by the EPA.  *See* April 2022 Denial of Petitions for Small Refinery Exemptions Under the Renewable Fuel Standard

---

[2] We need not decide whether 42 U.S.C. § 7607(b)(1) is a jurisdictional or venue provision.  It is enough that Congress made the provision mandatory and that the EPA has asked us to follow it.  *See RMS of Ga., LLC v. EPA*, 64 F.4th 1368, 1372 n.5 (11th Cir. 2023).

Program, 87 Fed. Reg. 24,300, 24,301 (Apr. 25, 2022) (publishing the EPA's finding that the April 2022 denial action was "based on a determination of nationwide scope or effect"); Notice of June 2022 Denial of Petitions for Small Refinery Exemptions Under the Renewable Fuel Standard Program, 87 Fed. Reg. 34,873, 34,874 (June 8, 2022) (publishing the same finding about the June 2022 denial action).

When deciding whether a final action is "nationally applicable," we begin by "analyzing the nature of the EPA's action, not the specifics of the petitioner's grievance." *RMS of Ga.*, 64 F.4th at 1372; *see also Sierra Club v. EPA*, 926 F.3d 844, 849 (D.C. Cir. 2019) ("The court need look only to the face of the agency action, not its practical effects, to determine whether an action is nationally applicable."); *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1199 (10th Cir. 2011) ("The nature of the regulation, not the challenge, controls."); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 670 (7th Cir. 2017) ("Under the straightforward (if wordy) statutory text," determining where a challenge to an agency action must be filed "depends entirely on — and is fixed by — the nature of the agency's action; the scope of the petitioner's challenge has no role to play . . . .").

Looking to the "face" of the challenged denial actions, *see RMS of Ga.*, 64 F.4th at 1373, we conclude that they were nationally applicable under § 7607(b)(1). First, the nationwide scope of the actions, which denied 105 petitions from refineries across the country, is a "strong indicator" of their national applicability. *ATK Launch Sys., Inc.*, 651 F.3d at 1197 (explaining that the fact that an

air quality designation regulation "reaches geographic areas from coast to coast and beyond is, at a minimum, a strong indicator that the regulation is nationally applicable"). The April denial action applied to petitions from over 30 small refineries "located within 18 states in 7 of the 10 EPA regions and in 8 different federal judicial circuits." The June denial action likewise applied to petitions from over 30 refineries "located within 15 states in 7 of the 10 EPA regions and in 8 different Federal judicial circuits." *See also RMS of Ga.*, 64 F.4th at 1373, 1374 n.7 (concluding that an EPA rule that allocated chemical usage permits was nationally applicable where the action was not limited in geographic scope and the EPA "did not act on the individual firm level and instead distributed permits to multiple firms, nationwide"); *cf. Sierra Club*, 926 F.3d at 849 (concluding that an action was not nationally applicable because it denied a "petition for objection to a single permit for a single plant located in a single state" and had "immediate effect only for [that] [p]lant").

Second, and more importantly, the EPA denied the hardship exemption petitions based on a new statutory interpretation and analytical framework that is applicable to all small refineries no matter their location or market. *See RMS of Ga.*, 64 F.4th at 1373–74 (in concluding that the EPA's allocation of chemical usage permits was a nationally applicable action, emphasizing that the action used a separately promulgated formula that did not base each firms' usage permits on entirely local or firm-specific factors); *see also S. Ill. Power Coop.*, 863 F.3d at 671 (concluding that a challenged action was "clearly" nationally applicable because it was "a final

rule of broad geographic scope containing air quality attainment designations covering 61 geographic areas across 24 states" and "promulgated pursuant to a common, nationwide analytical method"); *ATK Launch Sys., Inc.*, 651 F.3d at 1197, 1200 (concluding that the air quality designation regulation was nationally applicable where the EPA's action created a uniform standard and applied that standard across the country).

Hunt insists that the denial actions were locally applicable because, according to Hunt, § 7545(o)(9) requires that small refinery hardship decisions be based on individualized assessments of refinery-specific circumstances. The problem with that argument is that as Hunt acknowledges, the EPA did not base its denials on refinery-specific circumstances. In fact, Hunt complains in its brief to us that the EPA violated the CAA by *not* making individualized determinations and by ignoring refinery-specific evidence. It appears to us that in the denial actions the EPA did review the refineries' individual and market-specific evidence, but it determined that evidence did not affect its overall economic analysis or conclusions about the costs of RFS compliance. We must consider the national applicability of the challenged actions based on what the EPA actually did in the actions, not on what Hunt believes the EPA should have done. *See generally RMS of Ga.*, 64 F.4th 1372–73 (explaining that we look to the final action taken, not the nature of the petition for review).

Hunt relies on two unpublished opinions from other circuits involving challenges to EPA denials of multiple states' State

Implementation Plans (SIPs) for their failure to comply with certain national ambient air quality standards. *See Texas v. EPA*, No. 23-60069 (5th Cir. May 1, 2023); *Kentucky v. EPA*, Nos. 23-3216 & 23-3225 (6th Cir. Jul. 25, 2023). In those cases the Fifth and Sixth Circuits denied transfer, concluding that the SIP disapprovals were locally or regionally applicable because the actions by their nature regulated individual states. *See Texas*, No. 23-60069, at *10–11; *Kentucky,* Nos. 23-3216 & 23-3225, at *5; *see also Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013) (describing a SIP approval as the "prototypical" locally or regionally applicable action). The courts also concluded that the EPA had not shown that the SIP disapprovals had nationwide scope or effect because they "were plainly based on a number of intensely factual determinations unique to each State." *Texas*, No. 23-60069, at *11 (quotation marks omitted); *see Kentucky*, Nos. 23-3216 & 23-3225, at *5–6.

Even if we gave any weight to unpublished opinions (including those from other circuits), the *Texas* and *Kentucky* opinions wouldn't help Hunt. Unlike those two denial actions, the ones before us in this case do not involve SIP approvals or disapprovals. And as discussed, unlike those two denial actions, the ones before us in this case were not based on any individual refinery's specific circumstances or concerns.[3]

---

[3] In *Texas* the Fifth Circuit recognized that transfer to the D.C. Circuit would be appropriate where the EPA's action "uniformly appl[ies] to a broad swath of" petitioners. *See* No. 23-60069, at *10.

We conclude that the April and June 2022 EPA decisions in this case were nationally applicable and may be challenged only in the D.C. Circuit. Even if they were only locally or regionally applicable, they were based on a determination of nationwide scope or effect because they announced a new, universally applicable approach to evaluating hardship petitions, and the EPA published a finding to that effect. *See* 87 Fed. Reg. at 24,301, 34,874.

## III.

We are not alone in reaching that conclusion. The Third, Seventh, Ninth, and Tenth Circuits have all granted similar motions by the EPA to dismiss or transfer petitions for review of the same denial actions to the D.C. Circuit. *See Am. Refin. Grp., Inc. v. EPA*, No. 22-1991 (3d Cir. Aug. 9, 2022); *Am. Refin. Grp., Inc. v. EPA*, No. 22-2435 (3d Cir. Sept. 23, 2022); *Countrymark Refin. & Logistics, LLC v. EPA*, No. 22-1878 (7th Cir. July 20, 2022); *Countrymark Refin. & Logistics, LLC v. EPA*, No. 22-2368 (7th Cir. Sept. 8, 2022); *Calumet Mont. Refin., LLC v. EPA*, Nos. 22-70124 & 22-70166 (9th Cir. Oct. 25, 2022); *Wyo. Refin. Co. v. EPA*, No. 22-9538 (10th Cir. Aug. 23, 2022); *Wyo. Refin. Co. v. EPA*, No. 22-9553 (10th Cir. Sept. 12, 2022).

The Fifth Circuit is the only circuit to have denied the EPA's motions to transfer petitions for review of the April and June denial actions. *See Calumet Shreveport Refin., LLC v. EPA*, 86 F.4th 1121, 1130–33 (5th Cir. 2023). The two-member *Calumet* majority concluded that the challenged actions were locally or regionally applicable and not based on a determination of nationwide scope or effect. *Id.* It reached that conclusion after interpreting Fifth Circuit

precedent to require that the applicability focus be on the *"legal* effect" of the actions. *See id.* at 1131–32 (citing *Texas v. EPA*, 829 F.3d 405, 419 (5th Cir. 2016)). The actions had no national legal effect, the majority reasoned, because they did not bind small refineries whose hardship petitions were not the subject of the actions. *See id.* And the EPA had to consider refinery-specific evidence, which meant the effect of the EPA's determinations would not be the same for all refineries. *See id.* at 1132–33.

We find Judge Higginbotham's dissent in *Calumet* more persuasive. He pointed out that there is no basis in the text of 42 U.S.C. § 7607(b)(1) for considering an action's "legal effect." *See id.* at 1143–45 (Higginbotham, J., dissenting). Instead, the issue of statutory interpretation turns on the plain meaning of the words "nationally applicable," which looks to "the location of the persons or enterprises that the action regulates." *Id.* at 1143 (quotation marks omitted). That focus leads to the "inescapabl[e]" conclusion that the denial actions here are nationally applicable: "they apply one consistent statutory interpretation and economic analysis to small refineries nationwide." *Id.* at 1144–45. Like Judge Higginbotham, we can't escape that conclusion.

And again, even if the actions were locally or regionally applicable, we would disagree with the conclusion that they were not based on a determination of nationwide scope or effect. The EPA based its adjudications on a new statutory interpretation and economic analysis, and the scope or effect of that new approach is nationwide. *See id.* at 1145–46. Or, as Judge Higginbotham put it,

"The scope and effect of these core determinations are nationwide, as they are applicable to all small refineries no matter the location or market in which they operate." *Id.* at 1145.  We agree.

## IV.

As a protective measure, Hunt filed petitions for review of the April and June 2022 denial actions in the D.C. Circuit.  *See Hunt Refin. Co. v. EPA*, No. 22-1132 (D.C. Cir. filed June 24, 2022); *Hunt Refin. Co. v. EPA*, No. 22-1194 (D.C. Cir. filed Aug. 8, 2022).  Those petitions have been consolidated with other refineries' challenges to the same agency actions and are currently being briefed on the merits.  *See Sinclair Wyo. Refin. Co. v. EPA*, No. 22-1073 (D.C. Cir. June 15, 2023).  So while we conclude that Hunt's challenges to the denial actions must be heard in the D.C. Circuit, instead of transferring Hunt's petitions it will be more efficient and save a step or two for us to grant the EPA's motion to dismiss them.  *See, e.g., Calumet Mont. Refin., LLC v. EPA*, Nos. 22-70124 & 22-70166 (9th Cir. Oct. 25, 2022) (dismissing a refinery's petitions for review of the April and June denial actions because the refinery separately filed petitions challenging the same denial actions in the D.C. Circuit).

**THE PETITIONS FOR REVIEW ARE DISMISSED.**

LAGOA, Circuit Judge, Concurring:

I join the majority opinion in full. I write separately to clarify a point of law that is featured in the parties' arguments and to rectify a bit of confusion arising from this Court's dicta in *Sierra Club v. Leavitt*, 368 F.3d 1300 (11th Cir. 2004).

As Judge Carnes thoroughly explains, 42 U.S.C. § 7607(b)(1) is the provision of the Clean Air Act that governs judicial review of challenges to actions taken by the Environmental Protection Agency ("EPA"). It provides that, where the agency action being challenged is "nationally applicable," the petition for review "may be filed only in the United States Court of Appeals for the District of Columbia." § 7607(b)(1). Conversely, where the agency action being challenged is "locally or regionally applicable," § 7607(b)(1) provides that the petition for review "may be filed only in the United States Court of Appeals for the appropriate circuit," i.e., the appropriate court of appeals based on location. Although this is relatively straightforward, things get slightly more complicated in the hybrid scenario. Specifically, § 7607(b)(1) provides that the petition for review of "locally or regionally applicable" agency action "may be filed only in the United States Court of Appeals for the District of Columbia" if two conditions are met: (1) the agency action is "based on a determination of nationwide scope or effect"; and (2) "if in taking such action the Administrator [of the EPA] [found] and publishe[d] that such action is based on such a determination."

The issue is that, during a brief aside, this Court once blurred the lines between these two conditions. In *Leavitt*, the Sierra Club had asked us to review the EPA's decision not to object to a permit decision made by the Georgia Environmental Protection Division, *see* 368 F.3d at 1301, and we ultimately held that the EPA acted arbitrarily and capriciously because it failed to acknowledge its disparate interpretations of the term "major stationary source" as used twice in the relevant Georgia regulation, *id.* at 1304–09. In reaching that conclusion, we went out of our way to "call attention" to the point that, if the Administrator ever makes a finding that its interpretation of the relevant Georgia regulation is based on a determination of nationwide scope, then any challenges to the EPA's interpretation would belong "in the D.C. Circuit rather than this regional Circuit." *Id.* at 1308 n.12. We also wrote that "[i]t is for the Administrator of the EPA, not this Court, to judge whether [the] EPA has made a determination of nationwide scope." *Id.* This digression, in my view, mischaracterizes the framework established by § 7607(b)(1).

The Administrator's judgment as to whether a locally or regionally applicable EPA action is based on a determination of nationwide scope or effect certainly bears a relationship with the second condition for exclusive judicial review in the D.C. Circuit, i.e., that the Administrator publishes a finding to that effect. § 7607(b)(1). But the Administrator's judgment on this matter does not control the first condition for exclusive judicial review in the D.C. Circuit, i.e., that the agency action *actually be* "based on a determination of nationwide scope or effect." *Id.* For that prong to

22-11617                LAGOA, J., Concurring                3

have any significance, courts surely must form their own judgment on the matter. By suggesting that it is entirely up to the Administrator to judge whether an EPA action is based on such a determination, the quoted language from *Leavitt* effectively collapsed both conditions into the second condition, thereby rendering the first condition superfluous.[1]

In any event, because *Leavitt*'s discussion of § 7607(b)(1) focused on hypothetical scenarios, *see* 368 F.3d at 1308 n.12 (exploring what it would mean "if [the] EPA applies its interpretation [of the relevant language] consistently in the future" and "if the Administrator makes [a finding that the EPA made a determination of nationwide scope] in the future"), and was not necessary to support the decision's ultimate holding, it amounts merely to non-binding dicta. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("All statements that go beyond the facts of the case—and sometimes, but not always, they begin with the word 'if'—are dicta."); *see also United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) ("As our cases frequently have observed, dicta is defined as those portions of an opinion that are 'not necessary to deciding the

---

[1] The D.C. Circuit appears to have done the same in *Alcoa, Inc. v. E.P.A.*, No. 04-1189, 2004 WL 2713116 (D.C. Cir. Nov. 24, 2004)—the decision that the EPA has asked us to follow in its motion to dismiss or transfer Hunt's petition for review. *See id.* at *1 ("Under section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(B)(1), the Administrator has unambiguously determined that the final action by the Environmental Protection Agency . . . has nationwide scope and effect. Accordingly, all petitions for review of this action belong in this Circuit.").

4                        Lagoa, J., Concurring                        22-11617

case then before us.'" (quoting *United States v. Eggersdorf*, 126 F.3d 1318, 1322 n.4 (11th Cir. 1997))).  Indeed, our decision today reflects a proper understanding of the two related but separate conditions for exclusive judicial review in the D.C. Circuit rather than the understanding conveyed in *Leavitt*.  *See* Maj. Op. at 11 (recognizing that the April and June 2022 EPA decisions actually "were based on a determination of nationwide scope or effect" and, relatedly but separately, that "the EPA published a finding to that effect").  And we should adhere to this understanding in future cases.